Chris FURR, Appellant

v.

The STATE of Texas

NO. PD-0212-15

Court of Criminal Appeals of Texas.

Delivered: September 21, 2016

Travis W. Berry, for Appellant.

Douglas K. Norman, for the State.

## OPINION

HERVEY, J., delivered the opinion of the Court in which KELLER, P.J., JOHNSON, KEASLER, RICHARDSON, YEARY, and NEWELL, JJ., joined.

Chris Furr was charged with possession of a controlled substance after police found heroin on him while patting him down for weapons. He filed a motion to suppress, arguing that he was illegally stopped and frisked. The trial court denied the motion. Furr pled guilty, and was sentenced to two years' imprisonment, probated for three years. He appealed the denial of the motion to suppress, once again arguing that he was illegally stopped and frisked. The court of appeals affirmed the trial court's ruling. *Furr v. State*, No. 13-14-00287-CR, 2015 WL 307757, at *1 (Tex.App.—Corpus Christi Jan. 22, 2015) (mem.op.) (not designated for publication). We granted Furr's petition for discretionary review to determine whether the court of appeals erred when it held that the stop and frisk of Furr did not violate the Fourth Amendment prohibition on unreasonable searches and seizures.[1] Because we agree with the court of appeals, we will affirm its judgment.

## FACTS

One Tuesday afternoon, Officer George Alvarez of the Corpus Christi Police Department responded to an anonymous tip that two white males, one in all black and one in a black shirt and carrying a brown backpack, were using drugs on a street corner. An officer who later arrived at the scene testified that the corner was located in a "high drug, high crime" area. In response to the call, Alvarez drove by the street intersection and saw two males who fit the description given by the informant. As he drove past the men in his police car, he noticed in his rearview mirror that they were watching him as he drove past. He then approached the two,[2] but Furr avoided Alvarez and quickly walked into the nearby Mother Theresa Shelter. As he walked away, he repeatedly looked over his shoulder at Alvarez. Alvarez spoke to the other man, Collier, about the call police received. When another officer arrived, Officer Ayala, Alvarez told him that Furr walked away from him "furtive[ly], like he was trying to get away."

Both officers entered the shelter to make contact with Furr. They found him in the facility's yard, where according to Ayala, he was still acting nervous, seemed anxious, was profusely sweating, appeared to be evasive, and was trying to avoid them. Ayala asked Furr if he had any weapons on him, but Furr did not initially respond. It appeared to Ayala that Furr was "kind of out of it" and "looked like he was under the influence of a drug." To protect himself and others, Ayala frisked Furr for weapons. While doing so, he felt something in Furr's right front pocket that he knew from experience was a glass crack pipe. As he removed the pipe, he also found two syringes. After seizing the contraband, Furr was arrested for possession of drug paraphernalia, and according to Ayala, he was no longer free to leave. Ayala asked if he had any identification,

1. The ground which we granted for review states,

 Whether the Court of Appeals erred in holding that, under its view of *Florida v. J.L.*, 529 U.S. 266, 272, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000), an anonymous tip that a unidentified pedestrian is doing drugs near a homeless shelter, without more, is sufficient to justify a police officer's stop and frisk of a pedestrian the police find near that location?

2. The record is not clear, but it appears that Alvarez got out of his cruiser after driving past the two men and approached them on foot.

and Furr said that it was in his pocket. After removing the wallet and opening it, Ayala found two small balloons of what he believed to be heroin.

Furr was charged with possession of a controlled substance. He filed a motion to suppress, which the trial court denied. The record contains no findings of fact or conclusions of law. Furr pled guilty after losing his motion to suppress, but he reserved his right to appeal the ruling of the trial court.

## COURT OF APPEALS

Furr argued on appeal that the anonymous tip did not establish reasonable suspicion to detain and frisk him, but the court of appeals disagreed. *Furr*, 2015 WL 307757, at *6. It noted that brief investigative detentions are permitted when police have reasonable suspicion to believe that a person is involved in criminal activity and that, police are justified in patting down a suspect for weapons, if they have reasonable suspicion to believe that the suspect may be presently armed and dangerous. *Id.* at *3.

When analyzing whether police had reasonable suspicion to detain Furr, the court of appeals stated,

That Furr looked back at Alvarez when he walked away is not indicative of imminent criminal activity and is not "sufficiently distinguishable" from the behavior in which an innocent person would have engaged. Ayala stated that Furr

was acting "nervous" and was "sweating," but nervousness alone is insufficient to constitute reasonable suspicion. Moreover, we do not believe that sweating while standing outside in the middle of a south Texas summer afternoon is indicative of anything but a properly functioning human thermoregulation system.

*Id.* at *6 (internal citations omitted). Nevertheless, based on Ayala's testimony that Furr "was just kind of out of it," "looked like he was under the influence of a drug," and Furr's failure to respond when Ayala asked if he was armed, the court held that the tip was sufficiently corroborated to warrant a brief detention and a limited pat down of Furr for weapons.[3] *Id.* Although it concluded that the pat down was justified, it rejected the State's argument that the "guns follow drugs" presumption should be extended to people who are merely accused of possessing drugs.[4] *Id.* at n. 6.

## ARGUMENTS

Furr argues that United States Supreme Court precedent requires us to conclude that the anonymous tip in this case, without more, was insufficient to justify the stop and frisk. Among other cases, he relies on *Florida v. J.L.*, 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000). According to Furr, in that case, the Supreme Court held that an anonymous tip that a person was carrying a gun was insufficient standing alone to justify a police officer's

---

3. In a footnote, the court of appeals also stated that "there were facts other than Furr's failure to respond promptly to the question of whether he was armed that supported reasonable suspicion to detain—such as the fact that Furr matched the anonymous tipster's vague description and that he appeared to be under the influence of drugs." *Furr*, 2015 WL 307757, at *6 n. 7.

4. That argument states that, because people who possess drugs tend to have weapons, police are justified in frisking for weapons anyone suspected of possessing drugs. While acknowledging many cases holding that drug-trafficking suspects can be frisked for weapons because of the nature of the alleged criminal activity, the court declined to apply that presumption to people merely suspected of drug possession. *Furr*, 2015 WL 307757, at *6 n. 6.

stop and frisk of that person. *Id.* at 273–74, 120 S.Ct. 1375.

The State responds that Furr's detention did not begin until the frisk itself; therefore, anything that happened prior to the frisk can be considered in determining reasonable suspicion. The State also argues that there are a number of other factors that, when considered together, are sufficient to establish reasonable suspicion here: (1) the relative contemporaneity; (2) the high-crime location of the incident; (3) Furr's altering course and retreating into the shelter upon seeing law enforcement; and (4) Furr's nervousness, (5) unresponsiveness, and (6) possible intoxication.

With respect to the weapons frisk, the State contends that an officer's objective belief that a suspect is armed and dangerous can be predicated on the nature of the alleged criminal activity alone, and it argues that we should apply the "guns follow drugs" presumption to people accused only of possessing drugs. *Griffin v. State*, 215 S.W.3d 403, 409 (Tex.Crim.App.2006). According to it, because it is inherently difficult to separate drug dealers from drug users, officers should not be prevented from conducting a pat down of someone who is observed with drugs in a high crime area. The State also asserts that there was a heightened threat to officer safety in this case because the incident took place in a homeless shelter and Furr appeared to be under the influence of drugs and did not initially respond when asked whether he had a weapon.

### STANDARD OF REVIEW

We review a trial court's denial of a motion to suppress for an abuse of discretion and apply a bifurcated standard of review, affording almost complete deference to the trial court's determination of historical facts, especially when those determinations are based on assessments of credibility and demeanor. *Crain v. State*, 315 S.W.3d 43, 48 (Tex.Crim.App.2010). We review de novo, however, whether the facts are sufficient to give rise to reasonable suspicion in a given case. *Crain*, 315 S.W.3d at 48–49. When the trial court does not make express findings of fact, as in this case, we view the evidence in the light most favorable to the trial court's ruling and will assume it made findings that are consistent with its ruling and that are supported by the record. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex.Crim.App.2013). If the ruling of the trial court is correct under any applicable theory of law, we will sustain its ruling. *Arguellez v. State*, 409 S.W.3d 657, 662–63 (Tex.Crim.App.2013).

### DETENTIONS & FRISKS

"There are three distinct types of police-citizen interactions: (1) consensual encounters that do not implicate the Fourth Amendment; (2) investigative detentions that are Fourth Amendment seizures of limited scope and duration that must be supported by a reasonable suspicion of criminal activity; and (3) arrests, the most intrusive of Fourth Amendment seizures, that are reasonable only if supported by probable cause." *Wade v. State*, 422 S.W.3d 661, 667 (Tex.Crim.App.2013). This case implicates the first and second categories: consensual encounters and investigative detentions.

We review de novo the question of whether a consensual encounter has advanced into a detention. *Id.* at 668. There is no bright-line rule dictating when a consensual encounter becomes a detention. *Id.* at 667. Courts must examine the totality of the circumstances to determine whether a reasonable person would have felt free to ignore the officer's request or to terminate the consensual encounter. *Id.* Formulated a different way, a Fourth Amendment seizure occurs when there is application of

physical force or, where such is absent, a submission to an assertion of authority. *Id.* at 667–68. The test to determine whether a person has been detained is objective and does not rely on the subjective belief of the detainee or the police. *Id.* at 668.

 Reasonable suspicion to detain a person exists when a police officer has "specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that the person detained is, has been, or soon will be engaged in criminal activity." *Id.* at 668. "While 'reasonable suspicion' is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop." *Illinois v. Wardlow*, 528 U.S. 119, 123, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000). The test to determine whether reasonable suspicion existed is also an objective standard that disregards the subjective intent of the officer,[5] and we look to the totality of the circumstances, including the cumulative information known to cooperating officers at the time of the detention. *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex.Crim.App. 2011).

 An officer is justified in engaging in a protective frisk if he reasonably suspects that the person who he has lawfully detained is presently armed and dangerous. *Wade*, 422 S.W.3d at 669. The police need not be absolutely certain that the individual is armed. *O'Hara v. State*, 27 S.W.3d 548, 551 (Tex.Crim.App.2000). The test is simply whether a reasonably prudent person under the circumstances would be warranted in believing that his safety or that of others was in danger. *Id.* The intrusion must be based on specific articulable facts which, in the light of the officer's experience and general knowledge, together with rational inferences from those facts, would reasonably warrant the intrusion. *Anderson v. State*, 701 S.W.2d 868, 873 (Tex.Crim.App.1985).

### FLORIDA v. J.L.

In *J.L.*, an anonymous informant called police and reported that a young black male was at a bus stop wearing a plaid shirt and had a gun. *J.L.*, 529 U.S. at 268, 120 S.Ct. 1375. Two officers arrived at the bus stop and saw three black males standing at the stop, one of whom was wearing a plaid shirt. *Id.* "Apart from the tip, the officers had no reason to suspect any of the three of illegal conduct. The officers did not see a firearm, and J.L. made no threatening or otherwise unusual movements." *Id.* The police frisked J.L. and found the gun in his pocket. *Id.* The issue

---

5. Addressing the objective nature of the *Terry* test, the Fifth Circuit has explained,

> *Terry* cannot be read to condemn a patdown search because it was made by an inarticulate policeman whose inartful courtroom testimony is embellished with assertions of bravado, so long as it is clear that he was aware of specific facts which would warrant a reasonable person to believe he was in danger. Under the familiar standard of the reasonable prudent man, no purpose related to the protective function of the *Terry* rule would be served by insisting on the retrospective incantation "I was scared."

> Some foolhardy policemen will never admit fear. Conversely, reliance on such a litany is necessarily prone to self-serving rationalization by an officer after the fact. It would be all too easy for any officer to belatedly recite that he was scared in situations where he neither had any reason to be scared, nor was indeed scared.

*United States v. Tharpe*, 536 F.2d 1098, 1101 (5th Cir.1976). Thus, the testimony of Ayala that he was not in fear of Furr when patting him down is irrelevant to the analysis. *Griffin*, 215 S.W.3d at 409.

was whether an anonymous tip that a person has a gun is, by itself, sufficient to justify the stop and frisk of a person. *Id.*

The court noted that the only suspicion officers had that J.L. was armed was based on the anonymous tip, not any observations of their own, and that because the tip lacked sufficient indicia of reliability, the police did not have reasonable suspicion for the stop and frisk. *Id.* at 271, 274, 120 S.Ct. 1375. In reaching that conclusion, the court explained that, whether J.L. actually had a gun did not matter to the analysis because the reasonableness of an officer's suspicion is measured by what they knew before conducting the search. *Id.* at 271, 120 S.Ct. 1375. It also reasoned that, although the anonymous tip was useful for identifying the person accused of illegal activity by the informant, to supply reasonable suspicion the tip must show knowledge of concealed criminal activity. *Id.* at 272, 120 S.Ct. 1375. The Court concluded by distinguishing *Terry* frisk cases, stating that the decision in *J.L.* discussed only whether the police had reasonable suspicion to detain J.L., but it did not address pat downs of people who have been legitimately stopped. *Id.* at 274, 120 S.Ct. 1375.

## ANALYSIS

The court of appeals held that Furr's nervousness in combination with Ayala's observation that he appeared to be under the influence of a drug corroborated the tip sufficiently to support a brief investigative detention and that Furr's failure to promptly respond to Ayala's question about whether he was armed, in combina-

tion with the other circumstances, supported the protective frisk. *Furr*, 2015 WL 307757 at *6. We agree.

### 1. The Stop

Police received an anonymous tip that two people were using drugs on a specific street corner, and the tipster gave a description of the two men. The police knew that street corner to be a "high drug, high crime" area. When Alvarez approached the area in question, he found two individuals who matched the description provided by the informant. As he drove past Collier and Furr, he saw the two through his rearview mirror watching his vehicle as he drove away. When Alvarez approached them on foot to discuss the anonymous tip, Collier talked with Alvarez, but Furr walked away like he was trying to get away, glancing back at the duo repeatedly as he went.[6] The officers made contact with Furr in the shelter, and when they made contact, Ayala thought Furr's demeanor was still suspicious and that he appeared eager to avoid a conversation with the police. He was also anxious, nervous, sweating, and evasive. When Ayala asked Furr if he had any weapons on him, Furr did not initially respond, and it appeared to Ayala that Furr was "kind of out of it" and "looked like he was under the influence of a drug." At that point, Ayala frisked him for weapons and found a glass crack pipe.

■ Here, as in *J.L.*, the tip was sufficient only to identify the people that were allegedly engaging in illegal activity. *J.L.*, 529 U.S. at 271–72, 120 S.Ct. 1375. Howev-

---

**6.** Furr had the legal right to avoid the consensual encounter by walking away before it began or to end it after it began by walking away. That is the essence of "consensual." But we emphasize that the inquiry at this point is whether, under the totality of the circumstances, the police had reasonable sus-

picion to detain Furr for investigative purposes. Furr's decision to walk away, while Collier stayed to talk to Alvarez, was a perfectly acceptable one, but when considering the cumulative force of *all* of the circumstances, his choice to walk away may appear considerably more suspicious.

er, unlike in *J.L.*, once police arrived on the scene, they made a number of independent observations supporting the tip that Collier and Furr had drugs and were using them.[7] At the time Furr was detained, police had the following information: (1) an anonymous informant reported that two individuals on a specific street corner were using drugs; (2) Furr and Collier were at that the location and matched the descriptions provided by the tipster; (3) the police knew this location to be a "high drug, high crime" area; (4) Furr and Collier watched Alvarez as he drove past them; (5) when Alvarez approached Furr and Collier, Furr walked away furtively; and (6) when police found Furr in the shelter, he was sweaty, nervous, anxious, and seemed out of it, like he was under the influence of a drug. The observations of the police after arriving on the scene here distinguish this case from *J.L.*, in which the *only* basis for the reasonable-suspicion determination was the anonymous tip giving the description of a person carrying a gun at a bus stop. *J.L.*, 529 U.S. at 270, 120 S.Ct. 1375. Based on

the totality of the circumstances in this case, we hold that police had reasonable suspicion to detain Furr and investigate the allegations of drug use and possession based on the anonymous tip and the observations of responding police.[8]

## 2. Terry Frisk

Ayala testified that he patted Furr down for safety reasons because, when officers make contact with a subject on the street who is accused of using drugs in a "high drug, high crime" area, there is always a reason to believe that they will have weapons. Alvarez testified similarly. On cross-examination, Ayala said that, when he patted Furr down, he did not feel in danger or threatened. Alvarez and Ayala agreed that they did not see Furr commit a crime and that all of this began because of an anonymous tip describing the clothing of two people who were "doing drugs" on a specific street corner.

At the outset, the State argues that we should adopt a rule that it is per se objec-

---

7. We agree with the State that Furr was not detained until the frisk itself; therefore, anything that happened prior to the frisk can be considered in determining whether the police had reasonable suspicion to seize Furr. It was not until Ayala informed Furr that he was going to pat him down for weapons, and Furr submitted to that assertion of authority, that a reasonable person would not have felt free to ignore Ayala's command or to terminate the encounter.

8. Although the court of appeals ultimately reached the correct result, we are compelled to address a portion of its reasoning. In *Wade*, we said that the "the totality of the suspicious circumstances that an officer relies on must be sufficiently distinguishable from that of innocent people under the same circumstances as to clearly, if not conclusively, set the suspect apart from them." *Wade*, 422 S.W.3d at 670. Relying on this statement, the court of appeals appears to have engaged in a divide-and-conquer approach to viewing the evidence, analyzing and excluding individual circumstances as not suspicious instead of

considering the cumulative force of all the circumstances. *Murray v. State*, 457 S.W.3d 446, 448 (Tex.Crim.App.2015). For example, first it considered only that Furr watched Alvarez as he drove past him and concluded such was not suspicious because it was insufficiently distinguishable from the behavior of an innocent person. *Furr*, 2015 WL 307757, at *6. It then decided that nervousness and sweating "alone is insufficient to constitute reasonable suspicion." *Id.*

Our statement in *Wade* did not change the reasonable-suspicion inquiry or its totality-of-the-circumstances approach. We merely recognized that reasonable suspicion does not exist unless the totality of the circumstances supports that conclusion. *Wade*, 422 S.W.3d at 670 (citing *Crockett v. State*, 803 S.W.2d 308, 311 (Tex.Crim.App.1991)) (stating that, if a person's conduct is indistinguishable from that of an innocent person, there is no reasonable suspicion to believe criminal activity is afoot).

tively reasonable for the police to pat down a suspect for weapons if they are accused of possessing drugs. While it is true that we have held "it is objectively reasonable for a police officer to believe that persons involved in the drug business are armed and dangerous," we made that comment in the context of sellers of narcotics, not mere drug use. *Griffin*, 215 S.W.3d at 409 (citing *Carmouche v. State*, 10 S.W.3d 323, 330 (Tex.Crim.App.2000)) (stating that police are objectively justified in patting down drug dealers for weapons). And we decline the State's invitation to extend that reasoning now. We also reject the State's argument that, because the incident took place outside of a homeless shelter, Ayala was objectively justified in patting Furr down for weapons. The record from the suppression hearing does not indicate that the shelter was a homeless shelter, and even if it did, we fail to see how the fact that a person is accused of using drugs near a homeless shelter necessarily supports a reasonable suspicion that the person is armed and dangerous.

 Nevertheless, we agree with the court of appeals that a reasonably prudent person considering all of the circumstances in this case, including the anonymous tip, the personal observations of police, and the area involved, would have been warranted in believing that his safety or that of others was in danger. Accordingly, we hold that police were objectively justified in patting down Furr for weapons.

## CONCLUSION

Because we conclude that the police had reasonable suspicion to temporarily detain Furr and to pat him down for officer safety, we affirm the judgment of the court of appeals.

MEYERS, J., filed a dissenting opinion. ALCALA, J., dissented.

MEYERS, J., filed a dissenting opinion.

I was originally assigned this case and wrote an opinion holding that the stop and frisk of Appellant were unlawful. *See* the attached Exhibit A. The majority disagreed with me and has now issued an opinion that is not based on law, but on the feeling that the Appellant should not get relief. This is very similar to the Court's holding in *Murray v. State*, 457 S.W.3d 446 (Tex.Crim.App.2015), where the majority inferred that Murray had driven while intoxicated even though he was simply asleep in a car parked off of the roadway. There was nothing to support that inference and there is nothing here to support the belief that the officer's safety or that of others was in danger.

This case highlights how an officer can state even the most elusive characteristics of the interaction between himself and a suspect in order to justify his conduct toward the suspect. A glance, a "furtive" movement, anxiety, and evasiveness of a man in a homeless shelter who appeared to be "kind of out of it" are very tenuous reasons for violating someone's Fourth Amendment rights. I would go back to the standard where we required specific articulable facts to raise reasonable suspicion that someone is engaged in criminal activity and where anonymous tips had to be independently corroborated for reliability. But I guess this case gives the majority all the feels and it just can't resist upholding a detention and search.

I respectfully dissent.

## EXHIBIT A

## IN THE COURT OF CRIMINAL APPEALS

## OF TEXAS

NO. PD–0212–15

882

CHRIS FURR, Appellant

v.

THE STATE OF TEXAS

ON APPELLANT'S PETITION FOR
DISCRETIONARY REVIEW FROM
THE THIRTEENTH COURT OF AP-
PEALS NUECES COUNTY

MEYERS, J., delivered the opinion of
the Court.

## OPINION

Appellant was charged with possession
of less than one gram of a controlled sub-
stance after police found heroin on him
during a pat down. Appellant filed a pre-
trial motion to suppress, which the trial
court denied. Appellant then pled guilty
and was sentenced to two years' imprison-
ment, with the sentence suspended and
Appellant placed on community supervi-
sion for three years. Appellant appealed
the denial of the motion to suppress, argu-
ing that the actions of the officers consti-
tuted an illegal search and that the trial
court erred in denying the motion. *Furr v.
State*, No. 13–14–00287–CR, , 2015 WL
307757, 2015 Tex.App. Lexis 526 (Tex.
App.–Corpus Christi Jan 22, 2015) (mem.
op., not designated for publication). The
court of appeals affirmed the trial court's
ruling. We granted Appellant's petition for
discretionary review in order to determine
whether, under the facts of this case, the
officers were justified in conducting the
stop and frisk of Appellant.

## FACTS

Officers Mike Ayala and George Alvarez
testified that they were separately patrol-
ling the downtown area of Corpus Christi
when an anonymous call came in that re-
ported two white males, one in all black
and one with a black shirt and brown
backpack, using drugs on a specific street

corner. Officer Ayala testified that this
corner was located in a known "high crime,
high drug" area. When Officer Alvarez
drove by this location, he saw two males
that fit the description. As he drove past
the corner, he noticed in his mirror that
the men were looking back at his car.
Officer Alvarez then approached Appel-
lant's companion and, while speaking to
him, saw Appellant retreat into the nearby
Mother Teresa Shelter. Officer Ayala then
arrived, and the two officers went into the
shelter to make contact with Appellant.
They made contact with Appellant in the
yard of the facility, and Officer Ayala testi-
fied that Appellant was acting "kind of
anxious, nervous, sweating." Officer Ayala
testified that Appellant seemed "out of it"
and that he asked Appellant whether he
had weapons on him. Appellant did not
initially respond. Officer Ayala then con-
ducted a weapons pat-down of Appellant
and felt something he knew to be a glass
crack pipe in Appellant's pocket. Officer
Ayala removed the pipe and two syringes
from Appellant's pocket and placed him
under arrest for possession of drug para-
phernalia. The officer then pulled out Ap-
pellant's wallet to get his identification and
found two balloons that he believed to
contain heroin.

During the suppression hearing, Officer
Ayala testified that he arrived after Appel-
lant had already retreated into the shelter
and was simply told about him by Officer
Alvarez. However, because Appellant's
clothing fit the description from the anony-
mous call, they went into the shelter to
make contact with Appellant. Officer Alva-
rez explained that at the point when he
made contact with Appellant, he was con-
ducting an investigation, and Appellant
was no longer free to leave. Officer Alva-
rez stated that he did not see Appellant
commit a crime and that he was working
only off of the anonymous call and the fact

that the two individuals matched the clothing descriptions given in that call. Officer Ayala also explained that he conducted the weapons pat-down, or Terry frisk,[1] for the officers' safety, although he had no reason to believe that Appellant had weapons on him and said that he did not feel threatened or in danger. Officer Ayala testified that, because he would not take a chance with someone who was supposedly using drugs, it was his procedure to pat down anyone in this situation, even if only tipped off by an anonymous call.

Officer Alvarez agreed that he conducts a Terry frisk every single time there is a call of this nature because there is a reasonable suspicion that any subject he is contacting on the street has weapons on them. He also agreed that he was not in fear of Appellant, and that, apart from the anonymous call, he did not have any reason to believe that Appellant had any weapons on him or was involved in criminal activity.

The trial court denied Appellant's motion to suppress without written findings of fact or conclusions of law. Appellant subsequently pled guilty to possession of heroin, reserving his right to appeal the trial court's suppression ruling.

## COURT OF APPEALS

Appellant appealed the trial court's denial of his motion to suppress, arguing that the anonymous tip was not enough to provide the officers with the reasonable suspicion necessary to detain and frisk him.

The court of appeals first explained that, while a brief investigative detention is permitted where the officer has a reasonable suspicion that the individual is involved in criminal activity, the additional weapons frisk can occur only when there is a concern for officer safety. *Id.* at *3, 2015 Tex.App. Lexis 526 at *9–10 (citing *Carmouche v. State*, 10 S.W.3d 323, 329 (Tex. Crim.App.2000)). This means that the frisk is justified only when the officer has specific and articulable facts on which he can reasonably conclude the individual might be armed. *Id.* at *3, 2015 Tex.App. Lexis 526 at *10. The court of appeals also discussed anonymous tips, stating that they are rarely sufficient, alone, to establish the reasonable suspicion necessary and will require corroborated information in order to be determined reliable. *Id.* at *4–5, 2015 Tex.App. Lexis 526 at *11–12 (quoting *Matthews v. State*, 431 S.W.3d 596, 603 (Tex.Crim.App.2014); *Martinez v. State*, 348 S.W.3d 919, 923 (Tex.Crim.App.2011)).

The court of appeals said that Appellant's case was unlike that of *Matthews*, in which we held that an anonymous tip alleging that an individual was selling cocaine at a specific location could establish reasonable suspicion because it was supported by sufficient signs of reliability. *Id.* at *5, 2015 Tex.App. Lexis 526 at *14. It explained that the present case is distinguishable because: (1) *Matthews* did not consider reasonable suspicion to support a

---

1. In *Terry v. Ohio*, 392 U.S. 1, 30–31, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the Supreme Court held that "where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him."

*Terry* frisk; (2) the tip contained a far more detailed description than the one in this case; and (3) there were additional factors in *Matthews*, like the time of day and behavior of the appellant, that supported a suspicion that the appellant was armed. *Id.* at *6, 2015 Tex.App. Lexis 526 at *14–18. The court of appeals stated that, here, Appellant looking over his shoulder at the officer, and appearing nervous and sweating prior to the frisk were not enough to establish reasonable suspicion. *Id.* at *6, 2015 Tex.App. Lexis 526 at *19. The court of appeals concluded, however, that the testimony that Appellant was "out of it" and "looked like he was under the influence of a drug," combined with his nervousness, did indicate the credibility of the anonymous tip, which supports a brief investigative detention. *Id.* at *6, 2015 Tex. App. Lexis 526 at *19–20. The court of appeals then held that Appellant not initially responding when asked if he was carrying a weapon constituted a specific and articulable fact that indicated he may have possessed a weapon, thus making the *Terry* frisk justified. *Id.* at *6, 2015 Tex. App. Lexis 526 at *20–21.

The court of appeals affirmed the judgment of the trial court, and Appellant filed a petition for discretionary review with this Court. We granted review to determine whether the court of appeals erred in holding that the officer's stop and frisk of Appellant was justified.

## ARGUMENTS OF THE PARTIES

### Appellant's Argument

Appellant argues that the anonymous tip, without more, was not sufficient to justify the officers' stop and frisk. Because the tip was anonymous, Appellant explains that the officers must have independently corroborated the tip's information to estab-lish that it was reliable in its assertion of illegality before conducting the investigative detention. Appellant asserts that the officers in this case verified only innocent details of the tip, such as the clothing description, prior to detaining him and that the only indication to the officers of drug activity—Appellant's sweat and nervousness—occurred at the moment of detention. Appellant points out that the officers never testified that either believed that Appellant was involved in, about to be in involved in, or had been involved in, criminal activity.

Appellant contends that *United States v. Sokolow*, 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989), is informative in this case. There, federal Drug Enforcement Agency agents stopped Sokolow upon his arrival at the Honolulu airport based on the following information:

(1) he paid $ 2,100 for two airplane tickets from a roll of $20 bills; (2) he traveled under a name that did not match the name under which his telephone number was listed; (3) his original destination was Miami, a source city for illicit drugs; (4) he stayed in Miami for only 48 hours, even though a round-trip flight from Honolulu to Miami takes 20 hours; (5) he appeared nervous during his trip; and (6) he checked none of his luggage.

*Id.* at 3, 109 S.Ct. 1581. The Court held that the agents' stop of Sokolow was justified because his actions, taken together, were sufficient to create a reasonable suspicion that he was committing a drug crime. *Id.* at 11, 109 S.Ct. 1581. Appellant asserts that in the present case, unlike in *Sokolow*, not only was the tip completely anonymous, but the actions of Appellant observed by the officers, even taken together, failed to corroborate the anonymous tip that "drug activity" was occurring.

Appellant criticizes the court of appeals's conclusion that the totality of the circumstances supported the stop and frisk as vague and alleges that it did not conduct the proper analysis of the evidence. Appellant is also critical of the court of appeals' reliance on language from *Martinez*, in which we upheld the suppression of evidence obtained from a traffic stop that occurred based on an anonymous description of the vehicle, when the reliability of the caller was unknown and there were no specific facts suggesting that criminal activity was afoot. 348 S.W.3d 919. Appellant argues that the evidence in this case should be suppressed because, like in *Martinez*, there was no "connection to the unusual activity" that created a reasonable suspicion on which the officers could stop and frisk Appellant.

Appellant also points to *Florida v. J.L.*, 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000), in which the Supreme Court held that an anonymous tip that a person was carrying a gun was, without more, insufficient to justify a police officer's stop and frisk of that person. *Id.* at 274, 120 S.Ct. 1375. There, the Court explained that reasonable suspicion requires a tip to demonstrate knowledge of concealed criminal activity, not just tend to identify a certain individual. *Id.* at 272, 120 S.Ct. 1375. The Court concluded that the tip, because it provided only a description of a subject, lacked the indicia of reliability, such as predictive information on which the police could test the informant's credibility, that are required to justify a stop and frisk. *Id.* at 274, 120 S.Ct. 1375. Appellant believes that his case presents the same scenario as that in *J.L.*, and that the officers did not have the necessary reasonable suspicion to stop and frisk him because they did not corroborate the anonymous tip of "drug activity" prior to detaining him. Appellant contends that a Fourth Amendment balancing test dictates that his stop and frisk was unreasonable and asks this Court to reverse the judgment of the court of appeals.

*State's Argument*

The State asserts that the detention of Appellant did not begin until the frisk itself and, therefore, anything that happened prior to the frisk can be considered in determining reasonable suspicion. The State argues that, although there is no direct evidence of the credibility of the anonymous caller, the relative contemporaneity, the high-crime location of the incident, Appellant's altering course and retreating into the shelter upon seeing law enforcement, and Appellant's nervousness, unresponsiveness, and possible intoxication are all factors that, together, are sufficient to raise a reasonable suspicion that Appellant was engaged in criminal activity.

The State contends that the officers' frisk of Appellant was justified if, in addition to a having a reasonable suspicion of criminal activity, they also reasonably believed that he was armed and dangerous. The State explains that this belief can be predicated on the type of criminal activity that is suspected and that this Court has recognized that it is "objectively reasonable for a police officer to believe that persons involved in the drug business are armed and dangerous." *Griffin v. State*, 215 S.W.3d 403, 409 (Tex.Crim.App.2006). The State argues that, although there was no evidence that Appellant was a drug dealer, his flight, furtive behavior, and his appearance of being high all corroborated the tip that he had been using drugs. Because it is inherently difficult to separate drug dealers from drug users, the State contends, officers should not be prevented from conducting a pat down of someone who is observed with drugs in a high crime area. The State also asserts

that there was a heightened danger that the officers needed to guard against in this case because the incident took place in a homeless shelter, Appellant appeared to be under the influence of drugs, and Appellant did not initially respond when asked whether he had a weapon. For these reasons, the State believes that the trial court correctly denied Appellant's motion to suppress and that we should affirm the judgment of the court of appeals.

## STANDARD OF REVIEW

We review a trial court's denial of a motion to suppress under a bifurcated standard of review. *Delafuente v. State*, 414 S.W.3d 173, 177 (Tex.Crim.App.2013). We afford almost complete deference to the trial court's determination of historical facts, especially when based on "an assessment of credibility and demeanor," but conduct a *de novo* review of mixed questions of law and fact that do not hinge on credibility or demeanor determinations. *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim.App.2010). When the trial court does not make express findings of fact, as in this case, we view the evidence in the light most favorable to the trial court's rulings and will assume that it made findings that are consistent with its ruling and supported by the record. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex.Crim.App.2013). If the ruling of the trial court is correct under any applicable theory of law, we will sustain the trial court's decision. *Arguellez v. State*, 409 S.W.3d 657, 662–63 (Tex. Crim.App.2013). While the trial court is the sole factfinder at the suppression hearing, the conclusion of whether the totality of circumstances is sufficient to support the necessary reasonable suspicion of criminal activity will be reviewed *de novo*. *Madden v. State*, 242 S.W.3d 504, 517 (Tex.Crim.App.2007).

## DISCUSSION

We must first examine whether the officers had a reasonable belief, based on specific articulable facts, that Appellant was engaged in criminal activity so as to make their initial stop and detention of him justified. *Terry*, 392 U.S. at 21-23, 88 S.Ct. 1868; *Garcia v. State*, 43 S.W.3d 527, 530 (Tex.Crim.App.2001).This standard is an objective one that disregards the subjective intent of the officer and, rather, looks at whether the basis for detention was objectively justifiable. *Wade v. State*, 422 S.W.3d 661, 668 (Tex.Crim.App.2013). While only some minimal level of justification for the stop is needed, the officer must have more than an inarticulable hunch or mere good-faith suspicion that a crime was in progress. *Foster v. State*, 326 S.W.3d 609, 614 (Tex.Crim.App.2010); *Derichsweiler v. State*, 348 S.W.3d 906, 916 (Tex.Crim.App.2011). In deciding whether an officer had a reasonable suspicion, we examine the facts that were available to the officer at the time of the investigative detention. *Davis v. State*, 947 S.W.2d 240, 243 (Tex.Crim.App.1997). We also look to the totality of the circumstances, so that events that seem innocent in isolation may suggest imminence of criminal conduct when considered together. *Wade*, 422 S.W.3d at 668. If we determine that the officers did have a reasonable suspicion of criminal conduct, we then examine whether they had an objectively reasonable belief that Appellant was armed. *Id.* at 669. If it is determined that there was no reasonable suspicion on which to detain an individual, then the investigative detention and subsequent frisk violate the Fourth Amendment.

An officer's suspicion may be based on information provided by an informant's tip, rather than the officer's own observations, if that tip exhibits "sufficient indicia of reliability." *Alabama v. White*, 496 U.S.

325, 327, 332, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). An anonymous tip alone rarely contains the required indicia because it does not demonstrate the basis of the informant's knowledge or their veracity. *Id.* If they are suitably corroborated, however, anonymous tips can be sufficient. *Florida v. J.L.,* 529 U.S. at 270, 120 S.Ct. 1375. For example, in *Alabama v. White,* an anonymous tip to police stated that a woman would leave a specific apartment building in a brown Plymouth station wagon with a broken tail light and that the woman would be transporting cocaine. 496 U.S. at 327, 110 S.Ct. 2412. After corroborating innocent details, the officers stopped the woman and found cocaine. *Id.* at 331, 110 S.Ct. 2412. Although the Supreme Court indicated that this was a close case, it held that the officer's suspicion did become reasonable after the police surveillance. *Id.* at 332, 110 S.Ct. 2412. It explained that the accurate prediction of the woman's future behavior demonstrated the tipster's "special familiarity," which indicated that he or she had "reliable information about that individual's illegal activities." *Id.* In contrast, in *Florida v. J.L.,* the Supreme Court held that an anonymous tip that simply alleged that an individual was carrying a gun lacked the "moderate indicia of reliability present in *White* and essential to the Court's decision." 529 U.S. at 271, 120 S.Ct. 1375.

Officer Ayala testified that, at the point when they made contact with Appellant, they were conducting an investigation and that Appellant was no longer free to leave. This means that Appellant was detained at the first point of contact and that only circumstances that were evident to the officers prior to that point can be considered in determining whether they had a reasonable suspicion of criminal activity. Here, the circumstances evident to the officers prior to the detention were: (1) the anonymous tip; (2) the location being a "high drug, high crime" area; and (3) Appellant looking over his shoulder as he walked into the shelter.

The anonymous tip in this case lacked suitable indicia of reliability that would allow for it to provide the officers with reasonable suspicion. As in *Florida v. J.L.,* this tip contained no predictive information on which to test the tipster's credibility or knowledge. *Id.* It contained only the barest allegation of drug use along with a physical description of the alleged users. There was no information by which to identify the informant or hold him or her accountable. As the Supreme Court has stated, a tip that provides an "accurate description of a subject's readily observable location and appearance" is reliable for the limited purpose of correctly identifying the individual being accused, but it "does not show that the tipster has knowledge of concealed criminal activity." *Id.* at 272, 120 S.Ct. 1375. Reasonable suspicion requires that the tip's assertion of criminal conduct be reliable. *Id.* In this case, because there was insufficient corroboration of the barebones allegation, we cannot hold that the tip at issue could provide the basis for reasonable suspicion. The tip in this case tended only to identify the individuals being accused, and the officers did not confirm enough facts that would allow them to reasonably suspect that Appellant was, in fact, using drugs. Further, the circumstances of the high crime location [2] and of Appellant looking over his shoulder while walking away [3] are insufficient by them-

---

**2.** *See Crain v. State,* 315 S.W.3d 43, 53 (Tex. Crim.App.2010) ("Neither time of day nor level of criminal activity in an area are suspicious in and of themselves; the two are mere-ly factors to be considered in making a determination of reasonable suspicion.")

**3.** We agree with the conclusion of the court of appeals that this act is not sufficiently distin-

selves to provide the basis for the detention and, here, do not combine with the tip to constitute a basis for reasonable suspicion.

Because the circumstances preceding Appellant's detention, even when viewed in the light most favorable to the trial court's ruling, do not justify a reasonable suspicion that Appellant was involved in criminal conduct, the officer's detainment was unlawful. We, therefore, do not get to the question of whether the officers had an objectively reasonable belief that Appellant was armed and presently dangerous.

## CONCLUSION

Neither the anonymous tip, the location, nor Appellant's looking over his shoulder are sufficient, alone or in combination, to constitute reasonable suspicion. Therefore, the stop and frisk was unlawful and the heroin that was found as a result of that frisk should have been suppressed. For these reasons, the court of appeals erred in upholding the trial court's denial of the motion to suppress. We reverse the judgment of the court of appeals and remand the cause to the trial court for further proceedings consistent with this opinion.

guishable from that which an innocent person would have engaged in. *Furr*, 2015 WL

307757 *6, 2015 Tex.App. Lexis 526, at *19 (citing *Wade*, 422 S.W.3d at 670).