

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-17-00717-CR

Wayne Edward **WEIRICH**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 216th Judicial District Court, Gillespie County, Texas
Trial Court No. 6261
Honorable N. Keith Williams, Judge Presiding

Opinion by:     Sandee Bryan Marion, Chief Justice

Sitting:        Sandee Bryan Marion, Chief Justice
                Marialyn Barnard, Justice
                Patricia O. Alvarez, Justice

Delivered and Filed:  September 5, 2018

AFFIRMED

Appellant Wayne Edward Weirich ("Weirich") appeals from the trial court's order denying his motion to suppress evidence. We affirm the trial court's judgment.

## Background

On November 13, 2016, Gillespie County Sheriff's Deputy Nick Moellering was on patrol when he observed a pickup truck driven by Weirich. Deputy Moellering recognized Weirich and the two passengers in the truck, and he knew both passengers were narcotics users with narcotics charges pending against them. Because he believed one of the passengers (Emily Schmidt) had

active arrest warrants, Deputy Moellering stopped Weirich's truck. A dash-cam recording of the encounter was made from Deputy Moellering's patrol vehicle.

At 20:05:45 on the dash-cam recording, Deputy Moellering approached Weirich's truck and told him: "The reason I'm stopping you is because Emily has warrants. . . . Or at least she did on Friday." The traffic stop took place on a Sunday. Schmidt argued with Deputy Moellering, claiming she did not have any active warrants. At 20:06:36, Deputy Moellering asked Weirich and the two passengers to step outside of the truck and then radioed dispatch to confirm Schmidt had active warrants. Deputy Moellering testified Schmidt was under arrest at this point, although he did not place her in handcuffs or in the backseat of his police vehicle so that she could smoke a cigarette before going to jail. Deputy Moellering also ran warrant checks on Weirich and the other passenger.

At 20:11:05, Deputy Moellering asked Weirich to step aside and began questioning him. Deputy Moellering asked Weirich if he had any weapons on his person and patted him down. At 20:12:23, Deputy Moellering told Weirich that one of Schmidt's warrants was for possession of narcotics and asked: "Do you mind if I take a quick look in your car?" Deputy Moellering testified that Weirich "said something like, no, I don't mind" in response. The trial court acknowledged that the dash-cam audio recording at this point of the encounter "isn't clear," but concluded: "I think I heard [Weirich] say something to the effect of, no, I don't mind, or something like that." Deputy Moellering testified he had not yet confirmed whether Weirich had outstanding warrants at the time he asked for Weirich's consent to search the truck.

Deputy Moellering searched the truck and found a glass pipe containing methamphetamine in the center console area. After Deputy Moellering found the pipe, Schmidt stated: "I didn't give you consent to search my stuff." Deputy Moellering then asked Weirich, "But you said I could

look, right?" At 20:17:40, Weirich responded affirmatively. Deputy Moellering arrested Weirich for possession of methamphetamine in an amount less than one gram.

Weirich filed a motion to suppress evidence obtained as a result of the arrest. After a hearing at which Deputy Moellering was the sole witness to testify, the trial court denied the motion. Weirich pleaded guilty to possession of methamphetamine in an amount less than one gram, and the trial court sentenced him to eighteen months' imprisonment. Weirich appeals the trial court's order denying the motion to suppress.

## Discussion

### A. Standard of review

We review a trial court's denial of a motion to suppress using a bifurcated standard of review. *Furr v. State*, 499 S.W.3d 872, 877 (Tex. Crim. App. 2016). We defer to the trial court's determination of historical facts and rulings on mixed questions of law and fact. *Id.*; *Guzman v. State*, 955 S.W.2d 85, 87 (Tex. Crim. App. 1997). We review de novo the trial court's application of the law to the facts. *Furr*, 499 S.W.3d at 877.

Where, as here, the trial court does not make express findings of fact, we review the evidence in the light most favorable to the trial court's ruling and assume it made implicit findings supported by the record. *Id.* We will sustain the trial court's ruling if it is correct under any applicable theory of law. *Id.*

### B. Analysis

The Fourth Amendment protects individuals from unreasonable search and seizure. *See Kothe v. State*, 152 S.W.3d 54, 62 (Tex. Crim. App. 2004). We analyze the legality of traffic stops for Fourth Amendment purposes using the standard set forth in *Terry v. Ohio*, 392 U.S. 1 (1968). *Id.* at 63. The *Terry* analysis has two prongs: (1) whether the officer's action was justified at its inception, and (2) whether the search and seizure were reasonably related in scope to the

circumstances that justified the stop in the first place. *Terry*, 392 U.S. at 19–20. Here, Weirich challenges both *Terry* prongs. We address each separately.

### 1. The traffic stop was justified in order to execute an outstanding arrest warrant.

Police may execute an outstanding arrest warrant at any time and place they choose. *Greer v. State*, 436 S.W.3d 1, 7 (Tex. App.—Waco 2014, no pet.). This means police may initiate a traffic stop in order to execute an outstanding arrest warrant for a passenger. *See id.* (holding traffic stop to execute arrest warrants for driver and passenger was lawful).

Weirich argues the traffic stop was not justified because Deputy Moellering did not know there was an active arrest warrant for Schmidt at the time he pulled over Weirich's truck. However, Deputy Moellering testified he stopped Weirich's truck in order to execute outstanding arrest warrants for Schmidt. Although Deputy Moellering called dispatch to confirm the warrants were outstanding after Schmidt argued with him, he testified he was aware at the time he stopped Weirich's truck that Schmidt had active, outstanding arrest warrants as of "Friday." When Deputy Moellering initially approached Weirich's truck, he told Weirich: "The reason I'm stopping you is because Emily has warrants." Therefore, because the stop was initiated for the lawful purpose of executing an outstanding arrest warrant, we conclude the traffic stop was justified at its inception and satisfies the first *Terry* prong.

### 2. Because the traffic stop was not unreasonably extended, consent to search was not rendered involuntary.

Weirich argues that even if the stop initially was lawful, his consent to search was rendered involuntary because the stop was unreasonably extended beyond the circumstances that justified it in the first place. "[T]he general rule is that an investigative stop can last no longer than necessary to effect the purpose of the stop." *Kothe*, 152 S.W.3d at 63. For instance, if a driver is stopped on suspicion of driving while intoxicated, he must be released promptly as soon as the police officer

determines he is not impaired. *Id.* However, "[o]n a routine traffic stop, police officers may request certain information from a driver, such as a driver's license and car registration, and may conduct a computer check on that information." *Id.* A traffic stop is not fully resolved until the computer check is complete and the officer knows the driver has a currently valid license and no outstanding warrants and the car is not stolen. *Id.* at 63–64.

In this case, Deputy Moellering testified he requested a warrant check for Weirich, which was not complete at the time Weirich consented to a search of the truck. Therefore, although the initial purpose of the stop was complete upon Schmidt's arrest, the stop was not yet fully resolved at the time Deputy Moellering asked Weirich: "Do you mind if I take a quick look in your car?" *See id.*

A police officer may ask for consent to search a vehicle even without probable cause so long as he does not convey by words or deed that compliance is required. *Tucker v. State*, 369 S.W.3d 179, 185 (Tex. Crim. App. 2012) (holding consent involuntary if "it was coerced by threat or force, given under duress, or given only in submission to a claim of lawful authority"); *Hernandez v. State*, No. 04-05-00298-CR, 2006 WL 922704, at *1 (Tex. App.—San Antonio Apr. 5, 2006, no pet.) (mem. op.). We determine the voluntariness of consent to search by analyzing "the totality of the circumstances of the situation from the point of view of an objectively reasonable person." *Tucker*, 369 S.W.3d at 185.

Nothing in the record before us suggests Deputy Moellering conveyed either by words or by deed that compliance with the request to search was required or that Weirich gave consent under any coercion or duress. Weirich does not argue anything rendered his consent involuntary other than the fact that, he argues, the traffic stop continued longer than necessary to arrest Schmidt. Because Deputy Moellering did not unreasonably prolong the traffic stop or convey that Weirich

was required to consent to search, we conclude the consent to search was given voluntarily under the totality of the circumstances. Weirich's sole issue on appeal is overruled.

## Conclusion

Because we overrule Weirich's sole issue on appeal, we affirm the trial court's judgment.

Sandee Bryan Marion, Chief Justice

DO NOT PUBLISH