

# IN THE
# TENTH COURT OF APPEALS

## No. 10-22-00137-CR

**JOHN WESLEY CASTLOW,**

**Appellant**

**v.**

**THE STATE OF TEXAS,**

**Appellee**

### From the 369th District Court
### Leon County, Texas
### Trial Court No. 20-0101CR

## MEMORANDUM OPINION

John Wesley Castlow was convicted of aggravated sexual assault of a child and sentenced to life in prison. *See* TEX. PENAL CODE § 22.021. Because the trial court did not abuse its discretion in denying Castlow's motion to suppress and Castlow's complaint regarding the presentation of a polygraph examiner's testimony was not preserved or was invited error, the trial court's judgment is affirmed.

**BACKGROUND**

Castlow's wife received an anonymous electronic message from a person claiming

Castlow had sent messages to the person describing sexual abuse of Castlow's nine-month-old daughter. The anonymous person forwarded copies of the texts to Castlow's wife who then contacted the Leon County Sheriff's Office. Castlow also contacted the Sherriff's Office, initially asserting his wife was trying to blackmail him. At that time, however, he admitted he had sent the messages but denied any abuse of his daughter. Castlow agreed to take a polygraph examination. He made incriminating statements during the examination and ultimately confessed to sexually abusing his daughter.

MOTION TO SUPPRESS

In his first issue, Castlow contends the trial court erred in failing to suppress evidence elicited by the polygraph examiner because Castlow was in custody and had not been given his *Miranda* warnings.

### Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Lerma v. State*, 543 S.W.3d 184, 189-90 (Tex. Crim. App. 2018); *Furr v. State*, 499 S.W.3d 872, 877 (Tex. Crim. App. 2016). At a motion to suppress hearing, the trial judge is the sole trier of fact and judge of the credibility of witnesses and the weight to be given to their testimony. *Lerma*, 543 S.W.3d at 190. Therefore, we afford almost complete deference to the trial court in determining historical facts and mixed questions of law and fact that turn on credibility or demeanor. *Id.*; *State v. Ortiz*, 382 S.W.3d 367, 372 (Tex. Crim. App. 2012). When the posture of a case does not present issues of pure fact, or of mixed questions of law and fact that turn on credibility or demeanor, and presents only questions of the validity of the trial court's "legal rulings,"

as in this case, our review is de novo.  *Id.*

Further, when the trial court does not make explicit findings of fact, as in this case, we view the evidence in the light most favorable to the trial court's ruling and assume the trial court made implicit findings of fact supported by the record.  *Lerma*, 543 S.W. 3d at 190.  We will sustain the ruling of the trial court if it is correct under any applicable theory of law.  *Id.*

### Evidence

The trial court conducted an evidentiary hearing on Castlow's motion to suppress.[1]  Castlow testified at the hearing and admitted to voluntarily agreeing to take a polygraph examination.  That examination was conducted by "a lady from the Texas Department of Public Safety."  Castlow denied that the examiner read Castlow his *Miranda* warnings.  At some point during the examination, the examiner stopped the exam and began questioning Castlow and accusing him of being deceptive.  The examiner did not then read Castlow "his rights."  Castlow admitted he felt free to leave at the beginning of the interview with the polygraph examiner, but not at the end. Castlow testified to making "admissions," and after the admissions, he did not feel like he was free to leave.  However, he did not dispute that the examiner told him he was free to leave.

Texas Department of Public Safety officer, Lt. Rebecca Salazar, conducted the polygraph examination and testified about her conduct during the post-examination

---

[1] Two motions to suppress were filed but the hearing only pertained to the motion to suppress Castlow's statements based on a failure to give *Miranda* warnings.

interview. She agreed she made it clear to Castlow that the interview was optional. She agreed she did not give Castlow his *Miranda* warnings but stated Castlow was "still free to leave" and was not under arrest or in custody. Salazar agreed she never told Castlow he was *not* free to leave. And when Castlow said he wanted to leave, Salazar testified that she replied, "the door's right there." Later, when Castlow asked again if he was free to go, Salazar testified that she told him yes and that "he's free to leave at any time."

DPS Investigator Don Craft also testified at the hearing. He was not present during the polygraph examination or post-examination interview but only entered the room at the conclusion of the interview. He testified that his initial statement to Castlow was: "It's my understanding that you have said something to Becky Salazar here, and that you had a moment of clarity, and what is it you want to tell me?" In response, Castlow admitted to the offense. Craft then advised Castlow that Craft was not going to ask any more questions until Craft "*Mirandized* him." Craft testified he proceeded to give Castlow his *Miranda* warnings once Castlow admitted to the offense because Craft had developed probable cause to arrest Castlow for the offense of aggravated sexual assault of a child.

### *Custody*

Castlow asserts that because the polygraph examiner, Salazar, developed probable cause during the interview, Castlow was in custody for the purposes of the continued questioning and therefore, he should have been read his rights. *See Dowthitt v. State*, 931 S.W.2d 244, 255 (Tex. Crim. App. 1996) (fourth situation to determine if someone is in custody-when there is probable cause to arrest and law enforcement officers do not tell the suspect that he is free to leave.).

We evaluate whether a person has been detained to the degree associated with arrest on an ad hoc, or case-by-case, basis. *State v. Ortiz*, 382 S.W.3d 367, 372 (Tex. Crim. App. 2012). In making the custody determination, the primary question is whether a reasonable person would perceive the detention to be a restraint on his movement "comparable to . . . formal arrest," given all the objective circumstances. *Id.* Stationhouse questioning does not, in and of itself, constitute custody. *Dowthitt v. State*, 931 S.W.2d 244, 255 (Tex. Crim. App. 1996). Further, custody does not occur merely because the suspect submits to and fails a polygraph test. *Id.*

Concerning the fourth situation, *Dowthitt* informs us that the officers' knowledge of probable cause must be manifested to the suspect. *Id.* Such manifestation could occur if information substantiating probable cause is related by the officers to the suspect or by the suspect to the officers. *Id.* It does not, however, automatically establish custody; rather, custody is established if the manifestation of probable cause, combined with other circumstances, would lead a reasonable person to believe that he is under restraint to the degree associated with an arrest. *Id.*

### *Application*

Here, there are no "other circumstances" present that would lead a reasonable person to believe he is in custody. Castlow voluntarily agreed to take the polygraph examination. He knew he was free to leave. He knew participation in the interview was optional. During the exam and the interview, Castlow was told again he was free to leave. The entire exam, interview, and arrest occurred over a four hour period, with anything relevant to the motion to suppress occurring over half way through the 4 hours.

There was no indication from Castlow that he was denied anything he requested. When the investigator arrived, Castlow was not asked anything specific—only the general open-ended question, "what is it you want to tell me?" Once he relayed the commission of an offense, the investigator gave Castlow his *Miranda* warnings.

Accordingly, after viewing the evidence in the light most favorable to the trial court's ruling, but then conducting a de novo review of Castlow's custody argument, we determine the trial court did not err in denying Castlow's motion to suppress. Castlow's first issue is overruled.

**SUBORNATION OF PERJURY**

In his second issue, Castlow asserts that the direct examination of the polygraph examiner presumptively prejudiced the jury against him. Specifically, Castlow asserts that at the beginning of Lt. Salazar's testimony before the jury, Salazar implied that her sole job concerned polygraph examinations; but after an objection by Castlow, Castlow asserts that the prosecutor then assisted Salazar in falsely suggesting that Salazar performed an "interview," rather than a polygraph examination, of Castlow. Castlow argued that this action by the prosecutor bordered on "the subornation of perjury."

Castlow provides no citation to the record for any objection, and we have found none, to the perceived assistance in perjurious testimony. Thus, his complaint is not preserved for our review. *See* TEX. R. APP. P. 33.1. Even if it was preserved, after a general objection by Castlow to "polygraph information" being brought before the jury, Castlow agreed to the manner in which Salazar's involvement in the case would be presented,

going forward, to the jury.[2]  If the State's presentation of Salazar's involvement bordered on "the subornation of perjury" as Castlow argues, Castlow invited the error and is estopped from complaining about it on appeal.  *See Druery v. State*, 225 S.W.3d 491, 506 (Tex. Crim. App. 2007).

Castlow's second issue is overruled.

**CONCLUSION**

Having overruled each issue Castlow raises on appeal, we affirm the trial court's judgment.

TOM GRAY
Chief Justice

Before Chief Justice Gray,
     Justice Johnson, and
     Justice Smith
Affirmed
Opinion delivered and filed October 26, 2023
Do not publish
[CRPM]

---

[2] After a break, the State summarized to the trial court what had occurred and what would be done going forward:

> When we broke, [counsel] was objecting to the discussion of polygraph tests.  And just going forward, Ms. Salazar's testimony is going to be in regards to a polygraph test, or discuss any – I guess anything with regards to the polygraph test administered to Mr. Castlow, we're just going to be presenting it as a separate interview conducted by Ms. Salazar as part of the investigation.  All mentions of the polygraph have been removed from the video going forward....

When asked by the trial court, "is that your understanding," Castlow's counsel replied,

> "Yes, sir.  As long as it is clear to the jury that she's here to present her interview results, which is also part of her job, and not a polygraph."