# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-17-00533-CR

**Richard David Mason, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 390TH JUDICIAL DISTRICT
### NO. D-1-DC-16-206551, THE HONORABLE JULIE H. KOCUREK, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Following the denial of his pretrial motion to suppress evidence, appellant Richard David Mason pled guilty to possession with intent to deliver a controlled substance, methamphetamine, in the amount of four grams or more but less than 200 grams. *See* Tex. Health & Safety Code §§ 481.102(6), 481.112(a). The trial court sentenced appellant to five years' imprisonment in the Texas Department of Criminal Justice. *See id.* § 481.112(d); Tex. Penal Code § 12.32. In a single point of error, appellant challenges the trial court's denial of his motion to suppress evidence. Finding no abuse of discretion in the trial court's ruling, we affirm the trial court's judgment of conviction.

## BACKGROUND[1]

At approximately 6:15 on the evening of October 17, 2016, Andrew Wunderlich, a patrol officer with the Austin Police Department, observed a four-door Toyota with three men in it driving around the parking lot of a Walmart in south Austin. Officer Wunderlich ran the license plate and noted that the car was registered to an individual with a female's name but no female was in the car. Because the area was known to police for "assorted criminal activity," particularly auto theft, the officer decided to follow the car.

The Toyota left the Walmart parking lot, drove across the highway, and entered the parking lot of Home Depot. Officer Wunderlich followed in his patrol car; he did not activate his car's emergency lights or sirens. When the Toyota pulled into the Home Depot parking lot, one of the men in the car "immediately jumped out of the vehicle and ran inside of the Home Depot." The car then pulled into a parking space; the other two men remained in the car. After observing the men continue to sit in the car for several minutes, Officer Wunderlich pulled his patrol car up behind the Toyota in order to make contact with the car's occupants. The officer explained that it "seemed a little bit strange that they would pull into the parking spot and not get out, just be sitting there, so [he] was checking to make sure that they weren't broke down and that they were in fact okay." Officer Wunderlich did not activate his lights or sirens when he pulled up behind the parked car. There were no cars parked to the left or right of the Toyota, nor was there a car parked in front of it.

---

[1] The facts recited are taken from the testimony and evidence presented at the evidentiary hearing on appellant's motion to suppress.

2

Officer Wunderlich approached the car on foot. He was in uniform; he did not have his weapon drawn. He knocked on the driver's window to get the occupant's attention, and the driver rolled down the window. The officer asked—in a tone that was "just conversational"—if the occupants were okay. The driver, who the officer identified at the suppression hearing as appellant, indicated that they were fine. Officer Wunderlich then explained to appellant

> that [he] was talking to them because [he] had run the [license] plate, [and he] noted that it came back to a female owner and there were three males in the car, so [he] was letting them know that [the police] deal with a lot of auto thefts in that part of town and making sure that they did in fact have reason to be in possession of the car.

Appellant told Officer Wunderlich that it was his friend's car and was able to give the name of the registered owner of the car. Because he correctly gave that information, the officer concluded that appellant was "being truthful" and "just using a friend's car." Officer Wunderlich then made "small talk" with appellant, asking what they were doing at Home Depot. Appellant explained that they were working on a car-repair project with a friend and needed some tools. Towards the end of the conversation, Officer Wunderlich asked appellant "if [he] could take a look at his ID, if he had one that [the officer] could see." In making the request, the officer "specifically stated" to appellant that "he was not in trouble at that time" and explained that it was routine for the police to identify the people that they talked to. Appellant agreed and provided his ID to the officer. Officer Wunderlich went back to his patrol car and ran a computer check on appellant's identifying information. He discovered that appellant had an outstanding felony arrest warrant.

Officer Wunderlich detained appellant in order to confirm the arrest warrant. Ultimately, the warrant was confirmed, and appellant was arrested on the outstanding arrest warrant.

During a search incident to arrest, Officer Wunderlich found, on appellant's person, a digital scale with a "whitish" "narcotics" residue on it and 86 small plastic baggies, which the officer recognized as those "commonly used in the sale of illegal narcotics."

Bryce Sakamoto, also a patrol officer with the Austin Police Department, arrived on the scene as back-up to assist Officer Wunderlich. The officers identified the other occupant of the Toyota and discovered that he had outstanding municipal court warrants, so that individual was also arrested. The officers went inside Home Depot to search for the third occupant of the car. However, they were unable to locate him. Consequently, the officers had to impound the Toyota because they had no one who could take custody of the car.

On impounding the car, the officers conducted an inventory search. Officer Sakamoto found a "crystalline substance [that] appeared to be methamphetamine" in the map pocket of the driver's door of the Toyota.[2] In the same area with the substance, the officer found several small plastic baggies that are "typically used to package illegal substances, [such as] methamphetamine, for distribution."

Appellant was subsequently indicted for possession with intent to deliver a controlled substance, methamphetamine, in the amount of four grams or more but less than 200 grams, a first-degree felony. *See* Tex. Health & Safety Code §§ 481.112(a), (d), 481.102(6). The indictment contained two enhancement paragraphs, subjecting appellant to an increased punishment range under

---

[2] The final witness at the suppression hearing, a forensic scientist with the Austin Police Department, testified that the substance recovered from the driver's door of the car weighed 6.25 grams and contained methamphetamine.

the habitual offender provision of the Texas Penal Code upon conviction. *See* Tex. Penal Code § 12.42(d).

Appellant filed a motion to suppress. The trial court conducted a pretrial evidentiary hearing on the motion. Officer Wunderlich and Officer Sakamoto testified about their interaction with the car's occupants, the searches conducted, and the contraband seized. Appellant asserted that he was unlawfully seized by Officer Wunderlich because the officer's initial interaction with him was an investigative detention, not a consensual encounter, and, therefore, the evidence against him—recovered from his person and the car—was obtained in violation of the Fourth Amendment. At the conclusion of the hearing, the trial court denied appellant's motion to suppress, stating:

> All right. Well, we have uncontradicted testimony from the officer as to how this encounter occurred. I do believe the officer, and I do find that this was a consensual encounter, and therefore I'll deny the motion to suppress. I do note that the seizure of the drugs involved in this case was a search incident to a lawful arrest, and a lawful inventory of the car. And I also note that the arrest itself was justified on the basis of a felony arrest warrant that was out for the defendant. So there is no question about the arrest itself, so I will deny the motion to suppress at this time.

Appellant did not request, and the trial court did not subsequently make, written findings of fact or conclusions of law in support of the court's ruling.

After the denial of his motion to suppress, appellant pled guilty to the charged drug-possession offense pursuant to a negotiated plea-agreement. As part of the plea-bargain, the State abandoned the enhancement paragraphs, allowing appellant to be punished for a first-degree felony, not as a habitual offender, and appellant reserved his right to appeal the trial court's denial of his motion to suppress. In accordance with the plea-bargain agreement, the trial court sentenced

appellant to serve five years in prison. The court certified appellant's right to appeal the pretrial ruling on his motion to suppress, and this appeal followed.

## DISCUSSION

Appellant challenges the trial court's denial of his motion to suppress the evidence seized during his encounter with APD officers in the Home Depot parking lot. He contends that his initial interaction with Officer Wunderlich was an illegal seizure of his person, not a consensual encounter, and, therefore, the evidence was seized in violation of the Fourth Amendment.

We review a trial court's ruling on a motion to suppress evidence for an abuse of discretion, *Arguellez v. State*, 409 S.W.3d 657, 662 (Tex. Crim. App. 2013); *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006), and overturn the ruling only if it is outside the zone of reasonable disagreement, *State v. Story*, 445 S.W.3d 729, 732 (Tex. Crim. App. 2014); *Dixon*, 206 S.W.3d at 590. We apply a bifurcated standard of review, *State v. Rodriguez*, 521 S.W.3d 1, 8 (Tex. Crim. App. 2017); *Weems v. State*, 493 S.W.3d 574, 577 (Tex. Crim. App. 2016), giving almost total deference to a trial court's findings of historical fact and credibility determinations that are supported by the record, but reviewing questions of law de novo, *Furr v. State*, 499 S.W.3d 872, 877 (Tex. Crim. App. 2016); *Weems*, 493 S.W.3d at 577.

We view the evidence in the light most favorable to the trial court's ruling, *Furr*, 499 S.W.3d at 877; *State v. Robinson*, 334 S.W.3d 776, 778 (Tex. Crim. App. 2011), and uphold the ruling if it is correct on any theory of law applicable to the case, *Weems*, 493 S.W.3d at 577; *Absalon v. State*, 460 S.W.3d 158, 162 (Tex. Crim. App. 2015), even if the trial judge made the ruling for a wrong reason, *Story*, 445 S.W.3d at 732. When the trial court does not make explicit findings of

6

fact, we infer the necessary factual findings that support the trial court's ruling if the record evidence, viewed in the light most favorable to the ruling, supports these implied fact findings. *Johnson v. State*, 414 S.W.3d 184, 192 (Tex. Crim. App. 2013); *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008). In our review, the prevailing party "is afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from it." *Matthews v. State*, 431 S.W.3d 596, 601 n.5 (Tex. Crim. App. 2014).

The Fourth Amendment protects against unreasonable searches and seizures by government officials. *See* U.S. Const. amend. IV; *Hubert v. State*, 312 S.W.3d 554, 560 (Tex. Crim. App. 2010). Not every encounter between a civilian and a police officer implicates the Fourth Amendment. *Florida v. Bostick*, 501 U.S. 429, 434 (1991). There are three distinct types of police-citizen interactions: (1) consensual encounters that do not implicate the Fourth Amendment; (2) investigative detentions that are Fourth Amendment seizures of limited scope and duration, which must be supported by a reasonable suspicion of criminal activity; and (3) arrests, the most intrusive of Fourth Amendment seizures, which are constitutional only if supported by probable cause. *Furr*, 499 S.W.3d at 877; *Wade v. State*, 422 S.W.3d 661, 667 (Tex. Crim. App. 2013); *State v. Woodard*, 341 S.W.3d 404, 410–11 (Tex. Crim. App. 2011).

A consensual encounter "takes place when an officer approaches a citizen in a public place to ask questions, and the citizen is willing to listen and voluntarily answers." *Crain v. State*, 315 S.W.3d 43, 49 (Tex. Crim. App. 2010) (citing *State v. Perez*, 85 S.W.3d 817, 819 (Tex. Crim. App. 2002); *Corbin v. State*, 85 S.W.3d 272, 276 (Tex. Crim. App. 2002)). A consensual encounter does not implicate the Fourth Amendment because it is a consensual interaction, and the citizen is

7

free to terminate the encounter at any time. *Woodard*, 341 S.W.3d at 411; *Crain*, 315 S.W.3d at 49; *see Bostick*, 501 U.S. at 434 (so long as citizen feels that he is free to disregard officer and go about his business, officer may approach and ask questions without implicating Fourth Amendment); *Florida v. Royer*, 460 U.S. 491, 498 (1983) (highlighting that in consensual encounters, individuals "may decline to listen to the questions at all and may go on [their] way"). These types of encounters do not require any justification on the officer's part; an officer may initiate a consensual encounter without any indicia of criminal activity. *United States v. Mendenhall*, 446 U.S. 544, 553 (1980); *State v. Castleberry*, 332 S.W.3d 460, 466 (Tex. Crim. App. 2011); *see United States v. Drayton*, 536 U.S. 194, 201 (2002) (even when police officer lacks suspicion of criminal activity he may, among other things, pose questions to suspect so long as he does not induce suspect's cooperation by coercive means); *State v. Velasquez*, 994 S.W.2d 676, 678 (Tex. Crim. App. 1999) (explaining that probable cause "does not apply to a police officer's approaching a citizen to engage in conversation"). Furthermore, officers may be "as aggressive as the pushy Fuller-brush man at the front door, the insistent panhandler on the street, or the grimacing street-corner car-window squeegee man." *Garcia-Cantu*, 253 S.W.3d at 243; *see Wade*, 422 S.W.3d at 667 ("Such consensual encounters may be uncomfortable for a citizen, but they are not Fourth Amendment seizures."); *Shimko v. State*, No. 03-13-00403-CR, 2015 WL 7721962, at *2 (Tex. App.—Austin Nov. 25, 2015) (mem. op., not designated for publication), *aff'd*, No. PD-1639-15, 2017 WL 604065 (Tex. Crim. App. Feb. 15, 2017) ("Consensual encounters may involve embarrassment and inconvenience but not official coercion.").

Only when the implication arises that a police officer's authority cannot be ignored, avoided, or ended, does a Fourth Amendment seizure occur. *Castleberry*, 332 S.W.3d at 466–67; *see Garcia-Cantu*, 253 S.W.3d at 243 ("It is the display of official authority and the implication that this authority cannot be ignored, avoided, or terminated, that results in a Fourth Amendment seizure."). A person is "seized" when an officer, "by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *Mendenhall*, 446 U.S. at 552 (quoting *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968)); *see Wade*, 422 S.W.3d at 668 ("[I]f an officer through force or a show of authority succeeds in restraining a citizen in his liberty, the encounter is no longer consensual; it is a Fourth Amendment detention or arrest, subject to Fourth Amendment scrutiny."). Consequently, an investigative detention, which occurs when a citizen yields to a police officer's "show of authority under a reasonable belief that he is not free to leave," is a seizure. *Crain*, 315 S.W.3d at 49; *accord Johnson v. State*, 912 S.W.2d 227, 235 (Tex. Crim. App. 1995). Such seizures implicate a citizen's rights under the Fourth Amendment; thus, officers must have legal justification to conduct investigative detentions. *Woodard*, 341 S.W.3d at 411. The detaining officer must have a reasonable suspicion that the citizen is, has been, or is about to be engaged in criminal activity. *Johnson*, 414 S.W.3d at 192; *Castleberry*, 332 S.W.3d at 466.

To determine whether an interaction between a police officer and a citizen rises to the level of an investigative detention, courts must focus on whether "the officer conveyed a message that compliance with the officer's request was required." *Crain*, 315 S.W.3d at 51; *see Garcia-Cantu*, 253 S.W.3d at 243 ("At bottom, the issue is whether the surroundings and the words or actions of the officer and his associates communicate the message of 'We Who Must Be

9

Obeyed.'"). No bright-line rule dictates when a consensual encounter becomes a detention. *Furr*, 499 S.W.3d at 877; *Wade*, 422 S.W.3d at 667; *Woodard*, 341 S.W.3d at 411; *see Garcia-Cantu*, 253 S.W.3d at 243 ("Each citizen-police encounter must be factually evaluated on its own terms; there are no per se rules."). Courts must examine the totality of the circumstances to determine whether a reasonable person would have felt free to ignore the officer's request or to terminate the consensual encounter. *Furr*, 499 S.W.3d at 877; *Wade*, 422 S.W.3d at 667; *Crain*, 315 S.W.3d at 49; *see Garcia-Cantu*, 253 S.W.3d at 244 ("The officer's conduct is the primary focus, but time, place, and attendant circumstances matter as well."). "Formulated a different way, a Fourth Amendment seizure occurs when there is application of physical force or, where such is absent, a submission to an assertion of authority." *Furr*, 499 S.W.3d at 877–78; *accord Wade*, 422 S.W.3d at 667–68.

The test is whether a reasonable person in the citizen's position "would have felt free to decline the officer's requests or otherwise terminate the encounter." *Crain*, 315 S.W.3d at 51. The "reasonable person" is assumed "to have considerable fortitude." *Wade*, 422 S.W.3d at 667 n.19. He knows his rights and feels free to exercise them, is not intimidated by the police, and "rests secure in the knowledge that . . . the police cannot legally draw an inference of criminality" from his refusal to cooperate. *Id.* (quoting Daniel J. Steinbock, *The Wrong Line Between Freedom and Restraint: The Unreality, Obscurity, and Incivility of the Fourth Amendment Consensual Encounter Doctrine*, 38 San Diego L. Rev. 507, 563 (2001)). Furthermore, the test to determine whether a person has been detained is objective; it does not rely on the subjective belief of the detainee or the police. *Furr*, 499 S.W.3d at 878; *Wade*, 422 S.W.3d at 668. Whether the facts surrounding the

interaction between an officer and a citizen constitute a consensual encounter or a Fourth Amendment detention is subject to de novo review. *Furr*, 499 S.W.3d at 877; *Johnson*, 414 S.W.3d at 192; *Garcia-Cantu*, 253 S.W.3d at 241.

Appellant contends that his interaction with Officer Wunderlich was not a consensual encounter, but rather a seizure of his person, because he complied with the officer's show of authority—"a physical command to roll down the window" and an order for appellant to give the officer his ID. He also maintains that a reasonable person would have believed that he was required to answer Officer Wunderlich's questions after the officer "informed him that he was there to investigate a theft of a vehicle." However, the record supports the trial court's rejection of appellant's description of Officer Wunderlich's actions as a show of authority, appellant's portrayal of the officer's explanation for making contact with the car's occupants as an investigation of a vehicle theft, and, ultimately, appellant's characterization of the interaction as an unlawful seizure.

In his testimony at the suppression hearing, Officer Wunderlich explicitly denied giving appellant any commands when he approached appellant in the parked car:

Q.      How do you get the driver's attention?

A.      I knocked on the window.

Q.      And do you then tell the driver to roll the window down?

A.      I didn't say anything. I don't recall if I motioned for him to roll it down or not. I remember knocking on the window and him rolling the window down.

Q.      Did the driver yield to your show of authority and comply with your commands?

11

A.      I had not given any commands. He rolled the window down and he engaged in a consensual conversation.

In making its ruling on the motion to suppress, the trial court found Officer Wunderlich to be credible. Officer Wunderlich's testimony reflects that he gave no verbal commands but merely knocked on the car window to gain appellant's attention. The record does not reflect that the officer made any commanding gestures. While appellant asserts that the officer gave a "physical command to roll down the window," Officer Wunderlich testified that he did not recall whether he motioned for appellant to roll down the window, not that he did so. Moreover, even had the officer motioned for appellant to roll down his window so the two could talk without the glass barrier between them, we cannot say that the trial court was outside the zone of reasonable disagreement in concluding, implicitly, that such a gesture alone—that is, without an accompanying verbal directive—constituted a request rather than an order. As the Court of Criminal Appeals noted when discussing police contacts with citizens seated in parked cars,

> The mere approach and questioning of such persons does not constitute a seizure. The result is not otherwise when the officer utilizes some generally accepted means of gaining the attention of the vehicle occupant or encouraging him to eliminate any barrier to conversation. The officer may tap on the window and perhaps even open the door if the occupant is asleep. A request that the suspect open the door or roll down the window would seem equally permissible, but the same would not be true of an order that he do so.

*Garcia-Cantu*, 253 S.W.3d at 243 (quoting 4 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 9.4(a) at 433 (4th ed. 2004)) (internal citations omitted).

12

The record also refutes appellant's assertion that Officer Wunderlich ordered appellant to give him his ID. At the suppression hearing, the officer testified that he "asked for" and "requested" appellant's ID, and that appellant "willingly handed it to [him]." No evidence was presented to the contrary.[3] A police officer may approach a citizen to ask questions of that individual and ask to examine the individual's identification if the officer does not suggest that compliance with the officer's request is required. *Bostick*, 501 U.S. at 435; *Hunter v. State*, 955 S.W.2d 102, 104 (Tex. Crim. App. 1997); *Franks v. State*, 241 S.W.3d 135, 141–42 (Tex. App.—Austin 2007, pet. ref'd). No evidence at the suppression hearing indicated that Officer Wunderlich suggested that compliance with his request to see appellant's ID was required. Further, the officer testified that had appellant declined to provide his ID, he would have returned to his patrol car and driven away because he "had no further reason to detain [appellant] or speak to him."

Appellant contends that a reasonable person would have believed that he had to answer Officer Wunderlich's questions, asserting in his brief that appellant "surely didn't believe that he was free to break off communications" after Officer Wunderlich "informed him he was there to investigate a theft of a vehicle." However, contrary to appellant's suggestion, the testimony from the suppression hearing does not reflect that the officer communicated to appellant that he was talking to him as part of an ongoing investigation of an already-committed auto theft. He merely asked appellant questions and communicated the fact that the area was known for vehicle thefts. Even when officers have no basis for suspecting a particular individual, they may generally ask

---

[3]     When making its ruling, the trial court noted that the officer's testimony was uncontradicted.

questions of that individual as long as the police do not convey a message that compliance with their requests is required. *Bostick*, 501 U.S. at 434–35. Appellant cites to nothing in the record that demonstrates that Officer Wunderlich conveyed to appellant that he had to answer his questions. We are not persuaded that merely questioning an individual about possession of a car when it appears that the registered owner is not present and explaining that the area is one where auto thefts frequently occur conveys such a message.

The evidence from the hearing reflects that Officer Wunderlich made contact with appellant to ensure that everything was okay when appellant parked the car, but the occupants remained seated in the car, and to ascertain his reason for being in possession of a car registered to a female in an area of town where auto thefts are common. The questioning that occurred, in the manner in which the officer conducted it and under the circumstances present here, did not violate—or even implicate—appellant's Fourth Amendment rights. *See Royer*, 460 U.S. at 497–98 (holding that police officers "do not violate the Fourth Amendment by merely approaching an individual" and asking questions); *Wade*, 422 S.W.3d at 667 ("Police officers are as free as any other citizen to approach citizens to ask for information or cooperation."); *Castleberry*, 332 S.W.3d at 466 ("An officer is just as free as anyone to stop and question a fellow citizen.").

Instances where a person's interaction with police amounts to a seizure—rather than a consensual encounter—include the threatening presence of several officers, the officer's display of a weapon, physical touching of the citizen by the officer, the officer's words or tone of voice indicating that compliance with the officer's request might be compelled, the use of flashing lights or sirens, or the blocking of a suspect's vehicle. *See Mendenhall*, 446 U.S. at 554; *Crain*,

315 S.W.3d at 49–50; *Garcia-Cantu*, 253 S.W.3d at 243. Absent this type of evidence, otherwise inoffensive contact between a citizen and a police officer cannot, as a matter of law, amount to a seizure of that person. *Mendenhall*, 446 U.S. at 555.

Nothing in the record in this case indicates that appellant submitted to a show of force or authority by Officer Wunderlich that left him no choice but to remain in the Home Depot parking lot, roll down his window, and talk to Officer Wunderlich. Officer Wunderlich's testimony at the suppression hearing, which the trial court explicitly found to be credible, made clear that his communication with appellant was in the form of requests, not commands. Further, the evidence does not reflect "the threatening presence of several officers" that converged on the Toyota or surrounded it. Instead, the evidence reflects that Officer Wunderlich was alone when he approached appellant in the parked car on foot. In addition, there is no evidence that the officer used sirens, flashing lights, or a spotlight to stop appellant's vehicle when he followed the Toyota from the Walmart parking lot, when he pulled up behind the parked car in the Home Depot parking lot, or when he approached appellant in the parked car.

Moreover, there is no evidence that Officer Wunderlich used any type of authoritative signal, vocal tone, or gesture in an effort to detain appellant. The encounter was initiated by the officer knocking on the car window to gain appellant's attention, and appellant willingly rolling the window down. The first verbal communication was Officer Wunderlich asking appellant if the car's occupants were okay. An explanation of why he was making contact with appellant—in addition to checking on the well-being of the occupants—followed. The officer's testimony reflected that his dialog with appellant occurred in a "conversational" tone.

15

Furthermore, the evidence demonstrates that, during Officer Wunderlich's initial contact with appellant, there was no display of a weapon, no physical touching of appellant, and no restriction of appellant's movement. There was no evidence that Officer Wunderlich blocked appellant's vehicle from leaving the Home Depot parking lot. The officer placed neither himself nor his patrol car in front of appellant's car, and Officer Wunderlich testified that there were no vehicles surrounding appellant's car. The record is void of any evidence indicating that the officer's approach of appellant interfered with or restricted appellant's freedom of movement in any way. To the contrary, Officer Wunderlich's testimony indicated that there was "space for [appellant] to drive away"—"he could have gone left, right, or straight ahead." In addition, prior to the officer discovering the outstanding felony arrest warrant for appellant, there was no manifestation of an intent to formally detain appellant. The testimony at the hearing reflected, on several occasions, that, before Officer Wunderlich discovered the outstanding arrest warrant, appellant was "completely free to leave."

To suppress evidence on an alleged Fourth Amendment violation, the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct. *Amador v. State*, 221 S.W.3d 666, 672 (Tex. Crim. App. 2007); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005); *Russell v. State*, 717 S.W.2d 7, 9 (Tex. Crim. App. 1986), *disapproved in part on other grounds by Handy v. State*, 189 S.W.3d 296, 299 n. 2 (Tex. Crim. App. 2006). A defendant satisfies this burden by establishing that a search or seizure occurred without a warrant. *Amador*, 221 S.W.3d at 672; *Ford*, 158 S.W.3d at 492; *Bishop v. State*, 85 S.W.3d 819, 822 (Tex. Crim. App. 2002). While the record in this case reflects that the initial contact between Officer

16

Wunderlich and appellant occurred without a warrant, a review of the officer's conduct and the circumstances under which it occurred demonstrates that no physical force or show of authority restrained appellant. *See Mendenhall*, 446 U.S. at 552. The evidence at the suppression hearing reflects appellant's acquiescence to Officer Wunderlich's legitimate requests, not submission to the officer's show of authority. *See Immigration & Naturalization Serv. v. Delgado*, 466 U.S. 210, 216 (1984) ("While most citizens will respond to a police request, the fact that people do so, and do so without being told they are free not to respond, hardly eliminates the consensual nature of the response."). Thus, the historical facts in the record before us support the trial court's conclusion that the initial interaction between Officer Wunderlich and appellant was a consensual encounter, not a seizure of appellant. *See Garcia-Cantu*, 253 S.W.3d at 244 ("The question of when an encounter between police officers and a person in a car constitutes a 'seizure' depends on specific facts as to the manner of the encounter, the degree of authority displayed, and all other circumstances surrounding the incident."). Therefore, the seizure of the evidence from appellant's person and the car did not violate the Fourth Amendment. Accordingly, we conclude that the trial court did not abuse its discretion in denying appellant's motion to suppress. We overrule appellant's sole point of error.

## CONCLUSION

Having concluded that the trial court did not abuse its discretion in denying appellant's motion to suppress, we affirm the trial court's judgment of conviction.

_____
Edward Smith, Justice

Before Justices Baker, Triana, and Smith

Affirmed

Filed:   April 12, 2019

Do Not Publish