

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-19-00204-CR

———————————————————

KURT DALE JESMAIN, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 43rd District Court
Parker County, Texas
Trial Court No. CR18-0795

---

Before Sudderth, C.J.; Kerr and Wallach, JJ.
Memorandum Opinion by Justice Wallach

## MEMORANDUM OPINION

Appellant Kurt Dale Jesmain appeals the trial court's denial of his motion to suppress evidence of his heroin possession obtained as a result of what he contends was an illegal detention. Because we agree with the trial court that the encounter was consensual, and therefore not a detention, we affirm the trial court's judgment.

### Background

Around 1:54 a.m. on April 25, 2018, Reno Police Officer Robert Gillock was patrolling an area on Highway 199 when he drove past the La Junta Baptist Church and spotted a sedan parked in the lot with its windows down. Knowing that the church was closed, he surmised that someone was either in the vehicle or was walking the property. He drove his marked patrol SUV into the parking lot to check on the vehicle and to ensure that the church was not being burglarized. He explained at the suppression hearing that he had "pulled up . . . kind of perpendicular behind the vehicle" to run the vehicle's license plates when he saw a man, later identified as Jesmain, in the passenger seat lean forward and look in the side mirror at Officer Gillock. At some point, Officer Gillock turned on a spotlight from his patrol SUV and pointed it at the passenger side of the car.

As reflected in a body-camera recording admitted at the suppression hearing, Officer Gillock then exited his vehicle and asked, "What's going on, guys?" Jesmain leaned his head out of the passenger-side window and said, "Hey." Officer Gillock

asked, "You alright?" Jesmain responded, "Yeah, just sleeping." As Officer Gillock approached the vehicle he used a flashlight to look inside the vehicle.

Once he reached the passenger side of the vehicle, Officer Gillock informed Jesmain that he was parked in the lot of a closed church and asked him for identification. When Jesmain reached into the center console area of the car, Officer Gillock noticed a prescription pill bottle containing "pills of various shapes" and a "cellophane-type wrapper" that he testified he had "commonly [seen] used to carry narcotics[—]heroin, methamphetamine"—sitting on top of the pills inside the bottle. He asked Jesmain about the pills, and Jesmain—who appeared to be "very lethargic"—admitted that the pills were his and claimed that they were Tylenol PM and another prescription medication. Officer Gillock asked Jesmain to hand over the bottle, but Jesmain was reluctant and pleaded, "I didn't do anything wrong, Officer." Jesmain eventually did hand Officer Gillock the pill bottle, and Officer Gillock recognized the cellophane-wrapped substance inside as heroin. Officer Gillock asked Jesmain to exit the vehicle, handcuffed him, and placed him in the patrol SUV.

After being charged with possession of less than one gram of heroin, Jesmain moved to suppress "all evidence obtained as [a] result of the . . . stop, detention[,] and arrest" because Officer Gillock lacked reasonable suspicion or probable cause. Officer Gillock was the only witness to testify at the suppression hearing. Initially, Officer Gillock testified that Jesmain was not detained until Officer Gillock recognized the heroin in the pill bottle, at which point Officer Gillock felt that he had probable cause

to believe that a criminal offense was occurring. It was at that time that he also became concerned for Jesmain's welfare due to his experience working "numerous opioid overdoses," often in parking lots.

But on cross-examination, Officer Gillock admitted that—due to the positioning of his patrol SUV, parked at "about a 35-, 45-degree angle," and a fence and a playground in front of and to the side of Jesmain's vehicle, it would have been difficult for Jesmain to leave the scene without striking the patrol SUV. He conceded that Jesmain was "effectively detained" at the time that Officer Gillock had pulled his patrol vehicle perpendicular to Jesmain's sedan and had illuminated the passenger side with a spotlight. Officer Gillock also testified that if Jesmain had gotten out of his sedan and had run away at that point he would have had reasonable suspicion that Jesmain was evading arrest. Officer Gillock further stated that his "primary motivation" for checking the sedan's license plate was criminal investigation and that he was "looking for reasonable suspicion of some type of offense."

Finally, near the end of his cross-examination, Officer Gillock averred that he "had reasonable suspicion that a vehicle was parked at a closed church[] and . . . was obviously occupied" and that the church is located in what is considered a "high-crime area," where he estimated 85 to 90 percent of his narcotics arrests took place and where there was a "high concentration of burglaries [and] thefts."

After the hearing, the trial court denied the motion to suppress. The trial court later entered findings of fact and conclusions of law, including the following that are pertinent to this appeal:

2. That [the area in which the church parking lot is located] is a high[-]crime area.

. . . .

5. At the time of entering the church parking lot Officer Gillock did not know if any criminal activity was occurring. Officer Gillock pulled in to check things out and to lend a hand if necessary.

. . . .

11. Officer Gillock could see in plain view a bottle of pills in the center console.

. . . .

14. Officer Gillock observed in plain view[] a wrapper, appearing to be cellophane at the top of the pill bottle[,] which based on his training and experience is consistent with packaging for illegal substances.

15. Officer Gillock observed that the defendant was very sleepy and lethargic which[,] based on Officer Gillock's training and experience as a certified peace officer and EMT[,] . . . is consistent with opioid use. Officer Gillock believed the defendant was under the influence of an illegal substance.

16. This initial encounter took about 2-3 minutes.

17. Based on the totality of the circumstances, Officer Robert Gillock had reasonable suspicion to detain the defendant pending further investigation into the heroin offense.

18. Defendant handed Officer Gillock the pill bottle and inside the wrapper was a black sticky substance that appeared to be heroin.

The trial court concluded that the "initial exchange . . . was not a detention under the Fourth Amendment but rather a voluntary encounter during which Officer Gillock formed reasonable suspicion to detain and investigate" Jesmain for a criminal offense—possession of a controlled substance. Alternatively, the trial court concluded that "the exchange was also supported by either the suspicious[-]places[-]or circumstances exception or the community[-]caretaking exception to a warrant requirement."

Jesmain pleaded guilty pursuant to a plea bargain and was placed on four years' deferred adjudication. He now appeals the trial court's denial of his motion to suppress.

**Discussion**

Phrased as two points, Jesmain argues on appeal that his initial contact with Officer Gillock—when he pulled his patrol SUV somewhat perpendicular to Jesmain's sedan, shined a spotlight on the side of the sedan, and then approached the sedan and requested identification—was not a consensual encounter but constituted a detention unjustified by reasonable suspicion.[1] In response, the State defends the trial court's conclusion that the initial encounter was voluntary.

---

[1]In his first point, Jesmain argues, "Appellant's initial contact with police was a seizure." In his second, he argues, "The seizure lacked reasonable suspicion."

6

## I. Standard of Review

We apply a bifurcated standard of review to a trial court's ruling on a motion to suppress evidence. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We defer almost totally to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on evaluating credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).

Stated another way, when reviewing the trial court's ruling on a suppression motion, we must view the evidence in the light most favorable to the ruling. *Wiede*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007); *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those findings. *Kelly*, 204 S.W.3d at 818–19. We then review the trial court's legal ruling de novo unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling. *Id.* at 818. Even if the trial court gave the wrong reason for its ruling, we must uphold the ruling if it is both supported by the record and correct under any applicable legal theory. *State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007); *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003).

## II. Application

There are three established types of police-citizen interactions: (1) consensual encounters that do not implicate the Fourth Amendment; (2) investigative detentions that are Fourth Amendment seizures of limited scope and duration and must be supported by a reasonable suspicion of criminal activity; and (3) arrests, which are reasonable only if supported by probable cause. *Furr v. State*, 499 S.W.3d 872, 877 (Tex. Crim. App. 2016). The issue in this case is whether the initial encounter between Officer Gillock and Jesmain qualified as a consensual encounter or as an investigative detention. The trial court concluded that it was a consensual encounter, which is a determination that we will review de novo. *See id.*

Generally speaking, a consensual encounter takes place when an officer approaches a citizen in a public place to ask questions, and the citizen is willing to listen, voluntarily answers, and is free to terminate the encounter at any time. *Crain v. State*, 315 S.W.3d 43, 49 (Tex. Crim. App. 2010). By comparison, in an investigative detention, a person yields to the police officer's show of authority under a reasonable belief that he is not free to leave. *Id.* There is no bright-line rule dictating when a consensual encounter becomes a detention, and we must examine the totality of the circumstances to determine whether a reasonable person would have felt free to ignore an officer's request or to terminate the consensual encounter. *Furr*, 499 S.W.3d at 877. The test to determine whether a person has been detained is objective and does not rely on the subjective belief of the detainee or the police. *Id.* at 878.

The Court of Criminal Appeals has noted several factors as indicative of a detention or seizure, including whether police vehicles blocked in a defendant's car, police use of bright spotlights or flashlights, "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *See Johnson v. State*, 414 S.W.3d 184, 193 (Tex. Crim. App. 2013); *Crain*, 315 S.W.3d at 49–50 (quoting *U.S. v. Mendenhall*, 446 U.S. 544, 554, 100 S. Ct. 1870, 1877 (1980)).

Jesmain argues that his situation is indistinguishable from that in *Johnson*. In that case, an officer responded to a report of a suspicious person at an apartment complex. 414 S.W.3d at 186. The officer noticed a vehicle with its lights on backed into a parking space near the complex leasing office; the officer shined his high-beam spotlight in the car and saw the defendant sitting inside. *Id.* at 188. The officer parked "catty-corner" off the corner of the car, "not 'totally blocking it'" but requiring the defendant to "maneuver" or "manipulate" his car if he wanted to leave. *Id.* The officer continued to shine his patrol car's "large spotlight" on the defendant's vehicle as he approached on foot and spoke to the defendant "using a loud authoritative voice." *Id.* The trial court found that the officer had articulated facts justifying "the minimal detention." *Id.* at 190. On appeal, the intermediate court of appeals held that the initial encounter was consensual. *Id.* The Court of Criminal Appeals disagreed, holding that—under the totality of the circumstances—it could not conclude that a reasonable

9

person would have felt free to leave and that the interaction therefore involved a detention, not a consensual encounter. *Id.* at 193. It explained

> that the officer's shining of a "pretty darn bright" high-beam spotlight onto a person sitting in a parked vehicle, parking the police car in such a way as to at least partially block the person's vehicle such that the person would have had to "maneuver" around the police car to drive away, using a "loud authoritative voice" in speaking with the person, asking "what's going on," and demanding identification manifests a detention, that is, an interaction that a reasonable person would not feel free to terminate. While none of these circumstances individually would necessarily lead to an inescapable conclusion that the person was detained, under the totality of these circumstances, we conclude that appellant was indeed detained—perhaps when the officer shined a bright light on him in his car, but certainly when the officer blocked appellant's car such that appellant would have had to "maneuver" his car from its parking place if he wished to terminate the interaction.

*Id.*

The trial court found that Officer Gillock, driving his marked patrol SUV and wearing his police uniform, "pulled into the parking lot behind [Jesmain's] vehicle." It did not expressly find that, and the parties dispute whether, Officer Gillock's patrol SUV was blocking in Jesmain's sedan so as to partially or fully prevent him from leaving. Jesmain relies upon Officer Gillock's testimony that Jesmain would have risked striking the SUV if he had backed up, but Officer Gillock qualified this statement by saying that he would have to review the body-camera recording again. That footage shows that his patrol SUV was not directly behind the sedan but was off to the right rear side of the sedan:

10



Viewing this in the light most favorable to the trial court's ruling, it does not appear that the sedan was blocked in such that Jesmain would have had to do anything more than back out of the parking spot, which is what he would have had to do in any circumstances to leave the parking spot. In this respect, the situation here is distinguishable from that in *Johnson*.

Similarly, the trial court did not expressly define the nature of Officer Gillock's tone, but we have the benefit of the body camera's recording of the following exchange:

> Officer Gillock: (Upon seeing Jesmain sit up in the passenger seat and look at Officer Gillock in the side mirror.) What's going on guys?
>
> (Officer Gillock exits his vehicle and begins approaching the passenger side of the car.)
>
> Jesmain (leaning out of the passenger window): Hey.

11

Officer Gillock (exiting his vehicle and beginning to approach Jesmain): You alright?

Jesmain: Yeah, just sleeping.

(Officer Gillock, still walking toward the sedan, turns on his flashlight and begins shining it into the interior of the car.)

Officer Gillock: Just you?

Jesmain: Yeah.

Officer Gillock: Oh, ok, I wasn't expecting someone to pop up in the passenger seat.

(At this point, Officer Gillock has reached the sedan and is shining his flashlight in the rear seat.)

Officer Gillock: Ok, you stopped . . . for a rest?

Jesmain: Yeah.

Officer Gillock: Ok, you got your driver's license on you, bud?

Again viewing the recorded interaction in the light most favorable to the trial court's ruling, we cannot characterize Officer Gillock's tone as "loud" or "authoritative," like the officer in *Johnson*. Officer Gillock did not shout at Jesmain or use threatening language; rather, he inquired as to Jesmain's wellbeing and referred to him as "bud." He did not display a weapon during the relevant time frame of their encounter.[2] "Police officers are as free as any other citizen to knock on someone's door and ask to talk with them, to approach citizens on the street or in their cars and

---

[2]Later, after Officer Gillock asked Jesmain to exit the vehicle and Jesmain began rummaging through the console, Officer Gillock did pull out his gun. The parties do not dispute that this was after the interaction became an investigative detention substantiated by reasonable suspicion.

to ask for information or their cooperation." *State v. Garcia-Cantu*, 253 S.W.3d 236, 243 (Tex. Crim. App. 2008).

Officer Gillock's tone further distinguishes the situation from that in *Johnson*, as well as the situations in *Crain*, *Garcia-Cantu*, and *Hernandez*, upon which Jesmain also relies. In *Crain*, the Court of Criminal Appeals held that a detention occurred when the officer shined his patrol-car headlights and called out, "Come over here and talk to me," when the defendant was walking across someone's yard. 315 S.W.3d at 51. The Court of Criminal Appeals concluded that the overhead lights combined with the "request-that-sounded-like-an-order" caused the defendant to yield and that a reasonable person would not have felt free to leave or to decline the officer's requests. *Id.* at 52. The trial court here impliedly did not find—nor can we conclude—that Officer Gillock's inquiries to Jesmain were "requests that sounded like orders."

In *Garcia-Cantu*, the Court of Criminal Appeals noted that the officer's car "boxed in" the defendant's truck; that the officer used an "authoritative, commanding voice and demeanor," that the officer turned on his patrol-car spotlight to "light up" the defendant's truck even before he stopped his car; and that the officer approached the truck in an "authoritative" manner. 253 S.W.3d at 245–47. Viewing these facts as a whole and in the light most favorable to the trial court's ruling—that a reasonable person would not have felt free to leave or terminate the encounter—the Court of Criminal Appeals held that the encounter was a detention. *Id.* at 249. Officer Gillock's use of a spotlight to illuminate the car in an unlit parking lot does not constitute

detention per se, especially considering the totality of the circumstances—namely, Jesmain's ability to back the sedan out of the parking spot—and Officer Gillock's nonthreatening tone. *See id.* at 236.

In *Hernandez*, this court acknowledged that, contrary to Jesmain's assertion in his brief, use of a spotlight alone is not enough to lead a reasonable person to think he is not free to leave, but a factor to be considered in the totality-of-the-circumstances assessment. *Hernandez v. State*, 376 S.W.3d 863, 872 (Tex. App.—Fort Worth 2012, no pet.). *Hernandez* is further distinguishable because the record had been lost, leading to our conclusion that the record did not support the trial court's voluntary-encounter finding. *Id.* at 873. As we have explained, we have the benefit of the record, including the body-camera recording, in this case. Viewing the totality of the circumstances in the light most favorable to the trial court's ruling that a reasonable person would have felt free to leave or terminate the consensual encounter, we hold that the trial court did not err by finding the initial encounter to be consensual and that the trial court did not abuse its discretion by denying the motion to suppress. We therefore overrule Jesmain's first point. Having done so, we need not address his second point, in which he argues that the detention was not supported by reasonable suspicion. *See* Tex. R. App. P. 47.1.

## Conclusion

Having overruled Jesmain's first point, which is dispositive, we affirm the trial court's judgment.

/s/ Mike Wallach
Mike Wallach
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  April 8, 2021