

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-0582-21

### TAIRON JOSE MONJARAS, Appellant

### v.

### THE STATE OF TEXAS

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FIRST COURT OF APPEALS
### HARRIS COUNTY

WALKER, J., delivered the opinion of the Court, in which RICHARDSON, YEARY, NEWELL, and MCCLURE, JJ., joined. KELLER, P.J., and HERVEY, KEEL, and SLAUGHTER, JJ., dissented.

## O P I N I O N

After the trial court denied his motion to suppress, Appellant Tairon Jose Monjaras pled guilty to unlawful possession of a firearm by a felon. He was sentenced to five years imprisonment. On appeal, Appellant argued that the trial court erred in denying his motion to suppress because his interaction with law enforcement was an investigative detention without reasonable suspicion rather than a consensual encounter. A majority of the court of appeals disagreed and found that the interaction was a consensual encounter. We hold that Appellant's interaction with law enforcement, which started as a consensual encounter, escalated into an

investigative detention. We reverse the judgment of the court of appeals and remand the case to that court to determine whether the investigative detention was supported by reasonable suspicion.

## I.     Background

In December 2018, Officer J. Sallee and Officer C. Starks were patrolling an area of southwest Houston purportedly associated with gang violence and narcotics trafficking. Around noon, Officers observed Appellant walking around an apartment complex with a backpack on. The officers thought it was "not normal" that Appellant looked down as the officers drove by and looked up when they passed. The officers also believed Appellant—wearing a beanie, light jacket, and pants—was overdressed for the weather.[1]

Officer Sallee wanted "to see where [Appellant] was going or what was going on." The officers turned the car around but did not see Appellant. The officers assumed Appellant ran away; however, they saw Appellant again on the other side of the complex. The officers pulled in front of Appellant but did not turn their police lights or siren on. Officer Starks can be heard on his body-worn camera recording announcing that the officers are heading into a "consensual encounter." He got out of the vehicle and introduced himself to Appellant. Meanwhile, Officer Starks exited the passenger side of the vehicle, walked around to the rear of the cruiser, and stood a few feet away. Both officers were in uniform with their service pistols visible but holstered. The police car was parked in front of Appellant while the officers stood on either side of him. There was an apartment building behind Appellant.

After introducing himself, Officer Sallee asked Appellant for basic information including

---

[1] Officer Sallee testified that the temperature was in the mid-sixties or seventies. Appellant's counsel stated in his closing argument during the motion hearing that the temperature from 6:00 AM to 12:00 PM ranged from fifty-seven to sixty-eight degrees.

his name, where he lived, and if he had identification. Officer Sallee stood close to Appellant, but his demeanor was relatively friendly. Appellant appeared to understand the questions and replied in broken English. Appellant told Officer Sallee that he lived in an apartment across the street and had left his identification at home, but he offered to write his name down. Officer Starks walked to the passenger side of the vehicle to retrieve a fingerprinting device.

While Appellant was writing his name, Officer Sallee asked Appellant if he had ever been arrested. Appellant responded that he had previously been arrested for "assault, ah, domestic violence." Officer Sallee then asked Appellant "You nervous? You look like you're nervous. You're shaking." Appellant seemingly confirmed that he was nervous. Meanwhile, Officer Starks returned and stood approximately two feet from Appellant.[2] This placed Appellant within arm's length of each officer.

Officer Sallee asked if Appellant had anything illegal on him, including weapons. Appellant shook his head "no," and Officer Sallee asked if he could search Appellant. Appellant did not respond but began emptying his pockets. Apparently trying to stop Appellant, Officer Sallee quickly responded, "Hold on, hold on, hold on. May I search you?" While asking this, Officer Sallee placed his hand on Appellant's arm. Appellant reached into his pocket again while Officer Sallee put his hand around Appellant's elbow and said, "It's a question. Hold on. Talk to me." Appellant continued to remove items from his pocket and said, "But I-I-I know. You said— you said you wanted to search me." With his hand on Appellant's back, Officer Sallee responded, "No, no, no, you're not understanding what I'm saying."

Meanwhile, Officer Starks took two steps toward Appellant, extended both hands

---

[2] While Officer Sallee was questioning Appellant, Officer Starks was briefly talking to an individual about an unrelated incident.

outwards with his palms facedown and instructed Appellant "manos, manos."[3] Officer Sallee then, more insistently, repeated, "May I search you? May I go into your pockets and search you?" Neither officer informed Appellant that he did not have to consent. After pausing, Appellant responded, "Yeah." Officer Sallee then instructed, "Okay, slide your hands on the car for me, please."

Appellant complied. Officer Sallee proceeded to search Appellant's person but did not find anything. He searched Appellant's bag and found bullets. After discovering the bullets, Officer Sallee searched Appellant again and found a pistol under Appellant's groin. A struggle ensued between Officer Sallee and Appellant. Officer Starks, believing that Appellant was going for his gun, subdued Appellant with a taser.

Appellant was arrested and charged with unlawful possession of a firearm by a felon. *See* TEX. PENAL CODE Ann. § 46.04(a). Appellant filed a motion to suppress the evidence seized by law enforcement in connection with his detention and arrest.[4] At the motion to suppress hearing, both officers maintained that Appellant was free to leave prior to the search and that they would not have chased him. The trial court denied Appellant's motion without making written findings of fact. Appellant subsequently pled guilty; however, he maintained his right to appeal the trial court's denial of his motion to suppress.

On appeal, Appellant claimed that the trial court erred in denying the motion to suppress because the encounter was an investigative detention without reasonable suspicion—rather than a consensual encounter. *See Monjaras*, 631 S.W.3d at 803. A divided First Court of Appeals

---

[3] "Mano" is the Spanish word for hand. *Mano*, LEXICO, https://www.lexico.com/es-en/traducir/mano (last visited Aug. 2, 2022).

[4] Appellant additionally moved to suppress: the arrest and evidence relating to the arrest; Appellant's statements in connection with the case and any testimony regarding such statements; communications intercepted in connection with the case and evidence derived from the communications; and any other matters the trial court believed should be suppressed.

found the encounter to be consensual and upheld the trial court's ruling. *Id.* at 810. Because the appellate court found that the encounter was consensual, the majority did not reach the issue of whether reasonable suspicion existed. *Id.* at 810 n.4. Justice Goodman dissented, arguing that while the initial encounter between Appellant and law enforcement was consensual, the encounter escalated into an investigative detention before Officer Sallee's search of Appellant because "[w]hen Monjaras hesitated to consent, the officers detained him by compelling his compliance through a show of their official authority, which included instructing Monjaras as to how he was to behave, flanking him, intruding into his personal space, and touching his person." *Id.* at 826 (Goodman, J., dissenting). We granted Appellant's petition for discretionary review to determine whether the court of appeals erred in finding that Appellant's interaction with the officers was a consensual encounter.[5]

## II. Law

### A. *Standard of Review*

This Court applies a bifurcated standard of review when evaluating a trial court's ruling on a motion to suppress. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). We afford almost total deference to a trial court's determination of historical facts if supported by the record, especially when the factfinding is based on an evaluation of credibility and demeanor. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997); *Wade v. State*, 422 S.W.3d 661, 666 (Tex. Crim. App. 2013). However, we conduct a de novo review when reviewing a trial court's application of law to facts that do not depend on credibility and demeanor. *Guzman*, 955

---

[5] Specifically, Appellant stated his ground for review as follows:

> The Court of Appeals erred when it determined that the interaction between the Appellant and Officers Sallee and Starks was at all times a consensual encounter. Although the encounter may have initially been consensual, the encounter quickly escalated into an investigative detention that was not supported by reasonable suspicion when the Appellant yielded to the officers' show of authority before the first search.

S.W.2d at 89. "We view the record in the light most favorable to the trial court's ruling and uphold the ruling if it is supported by the record and is correct under any theory of the law applicable to the case." *Ruiz v. State*, 577 S.W.3d 543, 545 (Tex. Crim. App. 2019). However, if evidence is conclusive, such as indisputable video evidence, we may disregard any trial court findings inconsistent with the conclusive evidence. *Miller v. State*, 393 S.W.3d 255, 263 (Tex. Crim. App. 2012).

We review de novo a trial court's application of the law of search and seizure to the facts. *Wade*, 422 S.W.3d at 667; *Valtierra*, 310 S.W.3d at 447. Specifically, we review de novo whether a police-citizen interaction amounts to a consensual encounter or an investigative detention "because that is an issue of law-the application of legal principles to a specific set of facts." *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008); *Johnson v. State*, 414 S.W.3d 184, 192 (Tex. Crim. App. 2013). "We review de novo the question of whether a consensual encounter has advanced into a detention." *Furr v. State*, 499 S.W.3d 872, 877 (Tex. Crim. App. 2016)

### B. *Consensual Encounter Versus Investigative Detention*

The Fourth Amendment guarantees citizens the right to be free from "unreasonable searches and seizures[.]" U.S. CONST. amend. IV. The law has recognized three types of police-citizen interactions related to searches and seizures: (1) consensual encounters that do not implicate the Fourth Amendment; (2) investigative detentions that must be supported by a reasonable suspicion of criminal activity; and (3) arrests that are reasonable only if supported by probable cause. *Furr*, 499 S.W.3d at 877; *Wade*, 422 S.W.3d at 667.

An encounter is consensual only if the citizen is free to leave and terminate the interaction at any time. *Johnson*, 414 S.W.3d at 193; *Crain v. State*, 315 S.W.3d 43, 49 (Tex.

Crim. App. 2010). An encounter is a detention if an officer, through a showing of force or authority, restrains a citizen to the point that an objectively reasonable person would not feel free to decline the officer's requests or terminate the encounter. *Wade*, 422 S.W.3d at 667–68; *Crain*, 315 S.W.3d at 49. "There is no bright line rule dictating when a consensual encounter becomes a detention." *Furr*, 499 S.W.3d at 877. Rather, reviewing courts must "examine the totality of the circumstances to determine whether a reasonable person would have felt free to ignore the officer's request or to terminate the consensual encounter." *Id.* at 877; *State v. Castleberry*, 332 S.W.3d 460, 467 (Tex. Crim. App. 2011). The test to determine whether a citizen has been detained is objective; the subjective intent or belief of the detainee or law enforcement is irrelevant. *Furr*, 499 S.W.3d at 878.

A consensual encounter will not escalate into an investigative detention solely because an officer asks a citizen for identification and permission to search. *Hunter v. State*, 955 S.W.2d 102, 104 (Tex. Crim. App. 1997). Nor will a consensual encounter become an investigative detention merely because an officer fails to inform the citizen that he does not have to comply with the requests. *Castleberry*, 332 S.W.3d at 466. However, an investigative detention does occur if the officer conveys to the citizen that compliance with the requests is required. *See Florida v. Bostick*, 501 U.S. 429, 434–35 (1991); *Castleberry*, 332 S.W.3d at 467.

In determining whether an interaction is a consensual encounter or an investigative detention, the "time, place, and surrounding circumstances must be taken into account, but the officer's conduct is the most important factor[.]" *Castleberry*, 332 S.W.3d at 467. This Court has also used the factors in *United States v. Mendenhall*[6] when assessing "what a reasonable person might have perceived during a given interaction with an officer[.]" *Crain*, 315 S.W.3d at 49; *see*

---

[6] 446 U.S. 544, 554 (1980) (Stewart, J.).

*also Garcia-Cantu*, 253 S.W.3d at 248 n.45; *Salcido v. State*, 758 S.W.2d 261, 264 n.3 (Tex. Crim. App. 1988). Under *Mendenhall*,

> [e]xamples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.

*Mendenhall*, 446 U.S. at 554; *Crain*, 315 S.W.3d at 49–50 (quoting *Mendenhall*).

### III. Analysis

Our issue is whether the court of appeals erred in affirming the trial court's ruling and finding that Appellant's interaction with Officers Sallee and Starks was a consensual encounter.[7] For the reasons below, we find that the court of appeals was incorrect. Appellant's interaction with Officers Sallee and Starks escalated into an investigative detention.

#### A. *Appellant's Initial Interaction with the Officers Was a Consensual Encounter*

We agree with Justice Goodman that the initial encounter between Appellant and Officers Sallee and Starks was consensual. *See Monjaras*, 631 S.W.3d at 818 (Goodman, J., dissenting). Judging the interaction by the totality of the circumstances and in the shoes of an objectively reasonable person, we cannot say that Appellant initially would have felt compelled to continue talking to the officers. *See Castleberry*, 332 S.W.3d at 467. While it appears the officers followed Appellant around the apartment complex to observe him, this was not impermissible.

---

[7] The State claims Appellant has not preserved the argument he is presenting to this Court. The State is incorrect. Appellant filed a motion to suppress alleging that Officer Sallee and Officer Starks violated his constitutional and statutory rights by subjecting him to an investigative detention without reasonable suspicion. Before the court of appeals, Appellant again argued that Officer Sallee and Officer Starks detained him. Today, Appellant again asserts this argument. Thus, error is preserved, and the case is properly before us. *See Thomas v. State*, 408 S.W.3d 877, 881 (Tex. Crim. App. 2013) ("An adverse ruling on a pretrial motion to suppress evidence will ordinarily suffice to preserve error on appeal[.]"); *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992) ("As regards specificity," for preservation purposes, "all a party has to do to avoid the forfeiture of a complaint on appeal is to let the trial judge know what he wants, why he thinks himself entitled to it, and to do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it.").

*See Katz v. United States*, 389 U.S. 347, 351 (1967) ("What a person knowingly exposes to the public . . . is not a subject of Fourth Amendment protection."). Additionally, the officers' subjective intent at the time of the interaction is not part of our detention analysis; it is irrelevant why the officers were following Appellant. *See Furr*, 499 S.W.3d at 878.

Further, in applying the *Castleberry* and *Mendenhall* factors, we note that the officers approached Appellant around midday in a public location using a tone that was not overtly hostile. *See Castleberry*, 332 S.W.3d at 467; *Mendenhall*, 446 U.S. at 554. Appellant was outnumbered as he was alone, and two officers were present, but Officer Starks limited his proximity to Appellant when the officers initially made contact—at one point walking away entirely. *See Mendenhall*, 446 U.S. at 554. Besides a brief handshake, the officers did not *initially* touch Appellant or speak to him in a manner indicating that compliance was required. *See Castleberry*, 332 S.W.3d at 467 (looking at officers' conduct); *Mendenhall*, 446 U.S. at 554 (looking at officers' language to see if compliance with request might be compelled). Officer Sallee asked Appellant to provide identifying information, and Appellant complied without hesitation. *See Castleberry*, 332 S.W.3d at 466 ("[T]he fact that the citizen complied with the [officer's] request does not negate the consensual nature of the encounter.").

Looking at the totality of the circumstances, we see officers who approached a citizen in a public place and questioned him for a short period of time regarding basic information. This interaction would arguably make an objectively reasonable person uncomfortable; however, this alone is not enough under our law to evidence more than a consensual encounter. *See Castleberry*, 332 S.W.3d at 463–64, 468 (finding initial encounter between law enforcement and citizen to be consensual when the officer approached the citizen at 3:00 AM behind a restaurant and asked the citizen for his identification and why he was in that location); *State v. Woodard*,

341 S.W.3d 404, 407–08, 412 (Tex. Crim. App. 2011) (finding initial encounter between citizen and law enforcement officer to be consensual when the officer approached the lone citizen on a sidewalk around 10:00 PM and immediately began questioning him).

"[T]he Constitution does not guarantee freedom from discomfort." *State v. Velasquez*, 994 S.W.2d 676, 679 (Tex. Crim. App. 1999). Appellant's initial encounter with Officer Sallee and Officer Starks was consensual. However, this is not dispositive. In conducting the required totality-of-the-circumstances analysis, we must analyze the rest of the interaction in the context of this initial approach to determine whether the consensual encounter escalated into an investigative detention.

B. *The Initial Consensual Encounter Escalated Into an Investigative Detention*

If a citizen's initial encounter with law enforcement is consensual, but an officer's official display of authority or show of force indicates that ignoring the officer's request or terminating the encounter is no longer an option, the consensual encounter has escalated into a seizure (or investigative detention) implicating the Fourth Amendment. *See Castleberry*, 332 S.W.3d at 467; *Garcia-Cantu*, 253 S.W.3d at 243. In finding that Appellant's interaction with law enforcement was a consensual encounter that did not escalate into an investigative detention, the court of appeals noted that Officers Sallee and Starks approached Appellant in the middle of the day, did not turn on their overhead lights or siren, "did not block appellant's path with their patrol car"; did not exhibit their weapons prior to finding Appellant's firearm; and did not indicate "to appellant that he was not free to leave" or that he was required to comply. *Monjaras*, 631 S.W.3d at 805–07. The appellate court also stated that Appellant willingly listened to and voluntarily answered the officers' questions. *Id.* at 805–06. Regarding the search, the court of appeals noted that "[t]o clarify that Sallee only wanted to know if he could search appellant,

10

Sallee and Officer Starks asked appellant to stop taking items out of his pockets" and that the "officers were trying to help appellant understand what Sallee meant when he asked appellant for his consent to search him." *Id.* at 808–09. The appellate court also correctly notes that Officer Starks did not touch Appellant. *See id.* at 808.

While the court of appeals is correct on some of these points, its argument that the encounter did not escalate to a detention fails because the majority's analysis undertook "a piecemeal or 'divide and conquer' approach" instead of viewing the totality of the circumstances—as a reviewing court is required to do. *See Garcia-Cantu*, 253 S.W.3d at 244 ("Just as with the determination of probable cause, a piecemeal or 'divide and conquer' approach is prohibited" when determining whether a police-citizen interaction constitutes a seizure.); *see also Michigan v. Chesternut*, 486 U.S. 567, 573 (1988) (The test to determine whether a person has been seized for Fourth Amendment purposes "is necessarily imprecise, because it is designed to assess the coercive effect of police conduct, taken as a whole, rather than to focus on particular details of that conduct in isolation."). The appellate court's analysis relies on snippets of Appellant's interaction with the officers—primarily focusing on the officer's initial contact with Appellant—rather than looking at the interaction in its entirety. Further, the court of appeals erred in placing import on the subjective intent of the officers instead of viewing the circumstances from the perspective of an objectively reasonable person in Appellant's circumstances. *See Furr*, 499 S.W.3d at 878.

Viewing the totality of the circumstances, when Officer Starks moved closer to Appellant with his hands extended and said "manos, manos" while Officer Sallee had his hand on Appellant's body, a reasonable person in Appellant's shoes would no longer feel free to disregard the officers' requests in light of the officers' show of authority. *See Furr*, 499 S.W.3d

11

at 877–78; *Castleberry*, 332 S.W.3d at 467. As evidenced by the officers' body-camera recordings, when Officer Sallee first asked Appellant if he could search him, Appellant did not respond—even though he had orally responded to Officer Sallee's other questions—and immediately attempted to remove his belongings from his pockets on his own. In response, Officer Sallee instructed Appellant to "hold on" and placed his hand on Appellant's arm:

 

*Figure 1. As seen from Officer Sallee's body camera, Sallee's hand is on Appellant's arm in the lower-right of the image.*

*Figure 2. As seen from Officer Starks's body camera, Sallee's hand is on Appellant's arm.*

When Appellant still did not respond and continued to reach into his pockets, Officer Sallee put his hand around Appellant's elbow:

 

*Figure 3. As seen from Officer Sallee's body camera, Sallee's hand is around Appellant's elbow in the lower right of the image. Sallee's thumb is in the crook of Appellant's elbow, while his fingers are behind Appellant's elbow.*

*Figure 4. As seen from Officer Starks's body camera, Sallee's partially-obscured hand is around the area of Appellant's elbow.*

Officer Starks then moved in even closer proximity to Appellant, and Officer Sallee once again

placed his hand on Appellant—this time on Appellant's lower back. Officer Starks instructed Appellant "manos, manos" while holding his hands out in front:

 

*Figure 5. As seen from Officer Sallee's body camera, Officer Starks has stepped towards Appellant and is holding his hands out in front of his body while telling Appellant, "manos, manos." Officer Sallee's hand, barely in the image, is on Appellant's back.*

*Figure 6. As seen from Officer Starks's body camera, Officer Starks's fingers are splayed out in front of his body, at the very bottom of the image. Officer Sallee's hand behind Appellant is obscured by Appellant's body.*

Starks's words "manos, manos" ("hands, hands") and his actions stepping toward Appellant and holding his hands out conveyed the message to Appellant to "stop what you're doing and keep your hands where I can see them"—a message that a reasonable person would take as an order requiring compliance. An investigative detention occurs if the officer conveys to the citizen that compliance with the requests is required. *See Bostick*, 501 U.S. at 434–35 (an encounter remains consensual "as long as the police do not convey a message that compliance with their requests is required."); *see also Castleberry*, 332 S.W.3d at 467 ("whether a reasonable person would have felt free to ignore the police officer's request"). It was only then, after being told to stop what he was doing and hold his hands out, that Appellant acquiesced and allowed Officer Sallee to search him. While the appellate court notes that the officers' instructions and actions were merely to help Appellant understand what the officers were attempting to do,[8] we cannot rely on the officers' subjective intent in determining whether a person has been detained. *See Furr*, 499

---

[8] *Monjaras*, 631 S.W.3d at 809.

S.W.3d at 878.

In considering the *Castleberry*[9] and *Mendenhall*[10] factors, we again note that the time and location of Appellant's interaction with Officers Sallee and Starks is not necessarily indicative of a seizure. Like the location in *Castleberry*, the apartment complex encountered some foot traffic—Officer Starks is seen on video talking to another tenant during the interaction with Appellant. *See Castleberry*, 332 S.W.3d at 468. The interaction occurred outside around midday. *See id.* (discussing lighting in area where interaction took place). And neither officer pulled out his weapon until after the altercation began, although the officers' firearms were visible in their holsters. *Mendenhall*, 446 U.S. at 554 (noting "display of a weapon by an officer" could indicate a detention).

However, *Mendenhall* notes that "physical touching of the person of the citizen" can indicate a seizure invoking the Fourth Amendment, and *Castleberry* states that "the officer's conduct is the most important factor" in determining whether an investigative detention occurred. *Mendenhall*, 446 U.S. at 554; *Castleberry*, 332 S.W.3d at 467. As we recognized in *Crain*, under the totality of the circumstances, a statement that may sound like a request in one context can sound like an order—leaving no choice but to acquiesce—in another context. *See id.* at 52 (noting that an officer's asking an appellant to "come over here and talk to me" when coupled with the shining of a patrol car's overhead lights in the appellant's direction would not allow a reasonable person to feel "free to leave or decline the officer's requests").

In this context, even though the officers used relatively mundane tones, did not initially display their weapons, and did not use their lights or sirens, a reasonable person in Appellant's position would not feel free to ignore Officer Starks's statement "manos, manos." Before

[9] 332 S.W.3d at 467.
[10] 446 U.S. at 554.

14

Appellant "consented" to Officer Sallee's request to search, the investigative detention was underway. While beginning as a consensual encounter, Appellant's interaction with Officers Sallee and Starks rose to the level of an investigative detention when Officer Starks stepped towards Appellant, stated "manos, manos" ("hands, hands"), and showed Appellant to hold his hands out while Officer Sallee had his hand on Appellant's back.

For an investigative detention to be permissible under the Fourth Amendment, it must be supported by reasonable suspicion. *Furr*, 499 S.W.3d at 877; *Wade*, 422 S.W.3d at 667. Because the court of appeals did not reach the issue of whether reasonable suspicion existed, remand is appropriate. *See Osorio-Lopez v. State*, ___ S.W.3d ___, No. PD-0354-21, 2022 WL 2335394, at *5 (Tex. Crim. App. June 29, 2022) ("[T]his Court reviews only decisions of the courts of appeal unless 'the proper resolution of the remaining issue is clear . . . .'") (citing *Davison v. State*, 405 S.W.3d 682, 691–92 (Tex. Crim. App. 2013)).

## IV.    Conclusion

Although initially consensual, the encounter between Appellant and the officers became an investigative detention. Appellant was detained when Officer Starks moved very close to Appellant, told Appellant "manos, manos" while holding his hands out to direct Appellant to follow suit while Officer Sallee had his hand on Appellant's back. At the time this happened one officer had his hand on Appellant's back, the other officer was two or three feet in front of Appellant, the patrol car was within four or five feet from one side of Appellant and the apartment complex was approximately twenty-five feet from Appellant's other side. A reasonable person in Appellant's shoes would not feel free to leave under these circumstances. We conclude the appellate court erred in finding that Appellant was not detained. Accordingly, we reverse the judgment of the court of appeals and remand to that court to determine in

15

accordance with this opinion whether Officer Sallee and Officer Starks had reasonable suspicion to detain Appellant and whether that detention was valid.

Delivered: November 23, 2022
Publish